# 24-182-cv(L), 24-203-cv(CON)

## United States Court of Appeals

*for the*

## Second Circuit

---

VIRGINIA L. GIUFFRE,

*Plaintiff-Appellant,*

JULIE BROWN, MIAMI HERALD MEDIA COMPANY,

*Intervenors-Appellants,*

– v. –

JOHN DOE 17, JOHN DOE 73,

*Appellees,*

*(For Continuation of Caption See Inside Cover)*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

## CONFIDENTIAL BRIEF FOR PLAINTIFF-APPELLANT
## (REDACTED)

---

SIGRID S. MCCAWLEY
BOIES SCHILLER FLEXNER LLP
*Attorneys for Plaintiff-Appellant*
401 East Las Olas Boulevard,
 Suite 1200
Fort Lauderdale, Florida 33301
(954) 356-0011

---

CP COUNSEL PRESS    (800) 4-APPEAL • (327969)

SHARON CHURCHER, JEFFREY EPSTEIN,

*Respondents,*

GHISLAINE MAXWELL,

*Defendant-Appellee,*

TGP COMMUNICATIONS, LLC, ALAN M. DERSHOWITZ, MICHAEL CERNOVICH, DBA Cernovich Media, UNITED STATES VIRGIN ISLANDS,

*Intervenors.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................1

STATEMENT OF JURISDICTION....................................................2

STATEMENT OF ISSUES PRESENTED................................................2

STATEMENT OF CASE AND FACTS ................................................3

    A.    Giuffre files a one-count defamation complaint against Maxwell. ...............................................................3

    B.    Following the parties' settlement and this Court's directive in *Brown v. Maxwell*, the District Court conducts its review of sealed materials. ...................................................3

        1.    The District Court holds that all undecided motions— including dozens of motions in limine—are not judicial documents and were not properly part of the review mandated by this Court. ...............................4

        2.    The District Court orders Giuffre's deposition transcript to remain under seal. .........................................6

        3.    The District Court orders certain portions of Maxwell's July 2016 deposition transcript to remain under seal. ...............6

        4.    The District Court orders that all materials concerning Doe 97 and Doe 133 must remain under seal. ...........................7

STANDARD OF REVIEW ........................................................8

SUMMARY OF ARGUMENT .....................................................9

ARGUMENT ...................................................................10

    A.    The District Court erred in finding that motions undecided by Judge Sweet were not "judicial documents."....................................10

        1.    Whether or not a court decides a motion has no bearing on the "judicial document" inquiry..........................................11

i

2. Judicial inaction is subject to public accountability. ................17

3. The motions in limine and other documents at issue are judicial documents. ...................................................................18

B. The District Court erred in finding that Giuffre's deposition transcript should remain under seal.....................................................20

C. The District Court erred in finding that Maxwell's July 2016 deposition should remain under seal. ................................................22

D. The District Court erred in finding that the public's presumption of access was outweighed because of "mistaken" identities. ..........................................................................................27

CONCLUSION ........................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alexander Interactive, Inc. v. Adorama, Inc.*,
    2014 WL 4346174 (S.D.N.Y. Sept. 2, 2014) ......................................................18

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*,
    2016 WL 1071107 (S.D.N.Y. Mar. 18, 2016)....................................................16

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*,
    814 F.3d 132 (2d Cir. 2016) .................................................... 14, 16, 17

*Bernsten v. O'Reilly*,
    307 F. Supp. 3d 161 (S.D.N.Y. 2018) ................................................18

*Brown v. Maxwell*,
    929 F.3d 41 (2d Cir. 2019) ........................................................... passim

*Dawson v. Merck & Co.*,
    2021 WL 242148 (E.D.N.Y. Jan. 24, 2021) ........................................16

*Eagle Star Ins. Co. Ltd. v. Arrowood Indem. Co.*,
    2013 WL 5322573 (S.D.N.Y. Sept. 23, 2013) ............................. 15, 20

*F.T.C. v. Standard Fin. Mgmt. Corp.*,
    830 F.2d 404 (1st Cir. 1987)...............................................................21

*Gucci Am., Inc. v. Guess?, Inc.*,
    2010 WL 1416896 (S.D.N.Y. Apr. 8, 2010) ......................................13

*Guzik v. Albright*,
    2018 WL 6011612 (S.D.N.Y. Nov. 16, 2018)....................................23

*Int'l Equity Investments, Inc. v. Opportunity Equity Partners Ltd.*,
    2010 WL 779314 (S.D.N.Y. March 2, 2010) ......................... 15, 16, 17

*Lugosch v. Pyramid Co. of Onodaga*,
    435 F.3d 110 (2d Cir. 2006) ........................................................ passim

*McKoy v. Trump Corp.*,
    2024 WL 449979 (S.D.N.Y. Feb. 6, 2024) ........................................22

iii

*Newsday LLC v. Cty. of Nassau*,
  730 F.3d 156 (2d Cir. 2013) ...................................................................18

*Nixon v. Warner Commc'ns, Inc.*,
  435 U.S. 589 (1978)................................................................................17

*Nycomed US Inc. v. Glenmark Generics, Inc.*,
  2010 WL 889799 (E.D.N.Y. Mar. 8, 2010)...........................................23

*Prescient Acquisition Grp., Inc. v. MJ Pub. Tr.*,
  487 F. Supp. 2d 374 (S.D.N.Y. 2007) .............................................. 28, 29

*S.E.C. v. TheStreet.Com*,
  273 F.3d 222 (2d Cir. 2001) ............................................................ 23, 26

*Schiller v. City of New York*,
  2006 WL 2788256 (S.D.N.Y. Sept. 27, 2006) .......................................12

*Signify Holding B.V. v. TP-Link Rsch. Am. Corp.*,
  2022 WL 3704002 (S.D.N.Y. Aug. 26, 2022)........................................18

*The Diversified Group, Inc. v. Daugerdas*,
  217 F.R.D. 152 (S.D.N.Y. 2003) ...........................................................21

*Under Seal v. Under Seal*,
  273 F. Supp. 3d 460 (S.D.N.Y. 2017) ......................................................9

*United States v. Amodeo*,
  44 F.3d 141 (2d Cir. 1995) .................................................. 9, 11, 14, 29

*United States v. Amodeo*,
  71 F.3d 1044 (2d Cir. 1995) ............................................... 9, 17, 19, 23

*United States v. Avenatti*,
  2020 WL 70952 (S.D.N.Y. Jan. 6, 2020) ...............................................30

*United States v. Erie County*,
  763 F.3d 235 (2d Cir. 2014) ..................................................................17

*United States v. Hart*,
  91 F.4th 732 (4th Cir. 2024) ..................................................................25

*United States v. HSBC Bank USA, N.A.*,

iv

863 F.3d 125 (2d Cir. 2017) ...............................................................8

*United States v. Maxwell*,
  545 F. Supp. 3d 72 (S.D.N.Y. 2021) ...............................................24

*United States v. O'Connor*,
  650 F.3d 839 (2d Cir. 2011) ............................................................25

**Statutes**

28 U.S.C. § 1291 ...............................................................................2

28 U.S.C. § 1332 ...............................................................................2

28 U.S.C. § 476 ...............................................................................18

Civil Justice Reform Act of 1990 ....................................................18

**Other Authorities**

████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████.....................30

Press Release, United States Attorney's Office Southern District of New York,
  *Ghislaine Maxwell Sentenced To 20 Years in Prison for Conspiring With Jeffrey
  Epstein To Sexually Abuse Minors* (Jun. 28, 2022), https://www.justice.gov/usao-
  sdny/pr/ghislaine-maxwell-sentenced-20-years-prison-conspiring-jeffrey-epstein-
  sexually-abuse..................................................................................24

██████████████████████████████████
████████████████████████████████████████.................30

**Constitutional Provisions**

U.S. Constitution, Article III.............................................................20

## INTRODUCTION

Following this Court's directive to "conduct an individualized review of the sealed materials" and "unseal all documents for which the presumption of public access outweighs any countervailing privacy interests," *Brown v. Maxwell*, 929 F.3d 41, 51 (2d Cir. 2019), on December 18, 2024, the District Court entered a final unsealing order ruling on all remaining affected non-parties ("Does").  That order marked the culmination of a years long process where the District Court reviewed the sealed record with input from the parties and non-party Does and entered a series of orders related to the unsealing process.  This appeal stems from those orders.

While the unsealing process was not unsuccessful in providing the public access to many previously sealed materials relating to Jeffrey Epstein's sex-trafficking operation, the District Court made several reversible errors along the way in refusing to unseal certain records.  Notably, it refused to consider individualized review of sealed documents relating to motions *in limine*, finding that undecided motions could never be judicial documents—even motions on which the Court heard oral argument.  The District Court also erred in assigning certain documents a low or "barely cognizable" presumption of public access and in weighing privacy interests against a presumption of access.  Plaintiff-Appellant Virginia Giuffre seeks reversal of these rulings.

1

## STATEMENT OF JURISDICTION

The District Court had jurisdiction over the underlying action pursuant to 28 U.S.C. § 1332(a).

This Court has jurisdiction over this appeal as a final decision. 28 U.S.C. § 1291. The final unsealing order was entered on December 18, 2023. Giuffre timely filed a notice of appeal on January 17, 2024.

## STATEMENT OF ISSUES PRESENTED

1. Whether the District Court erred in finding that motions that were not decided by Judge Sweet (including fully briefed motions *in limine* on which Judge Sweet heard argument before the case settled) were not "judicial documents" to which a presumption of public access applies.

2. Whether the District Court erred in refusing to unseal Giuffre's January 16, 2016, deposition transcript and finding that the presumption of public access was lower because Judge Sweet "apparently" did not rely on the document in making his decision.

3. Whether the District Court erred in denying the motion to unseal the portions of Maxwell's July 2016 deposition testimony (and materials referencing it) concerning Maxwell's "sexual relationships with consenting adults."

4. Whether the District Court erred in finding that privacy interests of non-parties Doe 97 and Doe 133 outweighed the presumption of public access where the

2

record is devoid of any indication that Giuffre conceded or agreed that these individuals were not associated with Epstein.

## STATEMENT OF CASE AND FACTS

**A.    Giuffre files a one-count defamation complaint against Maxwell.**

On September 21, 2015, Plaintiff Virginia Giuffre filed her Complaint in the underlying action alleging that Defendant Ghislaine Maxwell defamed her by characterizing Giuffre's accusation of sexual assault and trafficking against Maxwell as "obvious lies."   A.147 ¶ 30.[1]   Giuffre pursued her case and after extensive discovery and motion practice the parties settled.   Much of the record, however, remained sealed on the docket.

**B.    Following the parties' settlement and this Court's directive in *Brown v. Maxwell*, the District Court conducts its review of sealed materials.**

The Miami Herald intervened and requested to unseal the record to provide the public with the full scope of Jeffrey Epstein's sex-trafficking operation. On July 3, 2019, this Court reversed the District Court's denial of The Miami Herald's request. *Brown v. Maxwell*, 929 F.3d 41, 44 (2d Cir. 2019); A.530–31.  In doing so, this Court broadly unsealed the summary judgment record and remanded the matter

---

[1] Citations to "A." refer to the Joint Appendix; citations to "SPA." refer to the Special Appendix; citations to "CA." refer to the Confidential Appendix; and citations to "DE" refer to the District Court docket.

3

to the District Court, which was tasked with "conduct[ing] an individualized review of the sealed materials" and "unseal[ing] all documents for which the presumption of public access outweighs any countervailing privacy interests." *Id.* at 51; A.544.

Afterwards, the District Court adopted a protocol for conducting its individualized review. A.566–78. This protocol allowed Giuffre, Maxwell, and non-parties mentioned in documents to provide their input as to whether continued sealing was appropriate. Over the next four years, the District Court conducted its review with input from the parties and affected non-parties and entered several orders relating to the unsealing process.

On December 18, 2023, the District Court entered a final unsealing order ruling on all remaining non-party Does. SPA.86–136. Giuffre appeals from the following orders related to the District Court's unsealing review.

> **1.  The District Court holds that all undecided motions—including dozens of motions in limine—are not judicial documents and were not properly part of the review mandated by this Court.**

On December 16, 2019, the District Court entered an order (SPA.1–2), followed by an opinion and order on January 13, 2020 (SPA.3–13), holding:

> Only motions actually decided by Judge Sweet – along with documents relevant to Judge Sweet's decisions on those motions – are properly considered judicial documents to which a presumption of public access attaches.

SPA.1; *see also* SPA.13 ("For the foregoing reasons, the Court concludes that

4

motions that were not decided by Judge Sweet and the papers associated with those motions are not judicial documents subject to the presumption of access.").  In its January 13, 2020, opinion, the District Court said "there was never, and now never can be, a judicial decision-making process that would trigger the public's right to access the undecided motions and the documents relevant to them."  SPA.7–8.

Among these undecided motions were motions *in limine*.  In anticipation of a trial scheduled for May 2017 (*see* A.183), both parties filed dozens of motions *in limine* arguing the admissibility of evidence.[2]  These motions were not decided because the parties resolved the case prior to trial, so they remain under seal in accordance with the Court's orders.  SPA.1, 13.  However, the District Court heard oral argument on many of these motions *in limine* in the beginning of 2017.[3]

Also impacted by this order was Maxwell's motion to compel production of Giuffre's settlement agreement with Jeffrey Epstein and related documents.[4]  At a

---

[2] The following docket entries alongside their attached exhibits correspond to the motions *in limine* and related papers and remain under seal in the District Court: DEs 520–531, 533–536, 561–564, 567–575, 577–585, 599–600, 602–603, 606–609, 611–619, 628–629, 631–632, 644–645, 650–651, 663–687, 689–692, 693–694, 716–717, 722–724, 726-727, 728, 729, 730, 731–733, 735–736, 738–751, 764, 768–770, 771–775, 781–792, 798–799, 807, 812, 815–821, 827–828, 878–879, 882–883, 885–886, 893–894, 906–907.

[3] *See* DEs 702, 755, 831, 847, 849.

[4] Sealed docket entries impacted include:  DEs 422, 423, 423-1, 423-2, 423-3, 423-4.

5

hearing on July 1, 2021, the District Court denied unsealing the motion to compel and related documents, reiterating that they were not judicial documents because Judge Sweet did not decide the motion. SPA.60.

### 2. The District Court orders Giuffre's deposition transcript to remain under seal.

On August 11, 2016, Alan Dershowitz moved to intervene. A.180–81. As part of his motion to intervene, he filed Giuffre's January 16, 2016, deposition, which was taken as part of litigation in the Florida state courts, under seal. CA.538–760. At a hearing on November 18, 2022, the District Court declined to unseal this document, holding:

> This is a deposition excerpt from a Florida state litigation attached by Mr. Dershowitz to his motion to intervene in this case. The document played no apparent role in the Court's decision on the motion. Thus, any presumption of public access to this document is barely cognizable and, accordingly, the objections of the Does to this document being unsealed are sustained. So the motion to unseal 363-7 is denied.

SPA.77–78.

### 3. The District Court orders certain portions of Maxwell's July 2016 deposition transcript to remain under seal.

At a hearing on January 19, 2021, the District Court ruled that Maxwell's deposition transcript, which was submitted as an exhibit to her brief opposing a request to reopen that deposition (CA.465–537), should remain redacted in part. The District Court stated:

6

During this deposition, Ms. Maxwell was asked repeatedly about her own sexual activity with consenting adults. Unlike in her prior deposition, at her July 2016 deposition, she provided testimony in response to those questions. As noted earlier, the presumption of public access does attach to this transcript (although, has the Court has observed, to a lesser extent than if it were submitted in connection with a dispositive motion). Here, however, public access to certain parts of the transcript is outweighed by Ms. Maxwell's countervailing interests in resisting disclosure of the details of her private, intimate relationships with consenting adults. This testimony is, in any case, far afield from the sex trafficking and sexual abuse allegations that were central to the dispute in *Giuffre v. Maxwell*. Although the prurient interest of some may be left unsatiated as a result, Ms. Maxwell's interest in keeping private the details of her sexual relationships with consenting adults warrants the sealing of those portions of her testimony (and any materials that reference them).

SPA.22. Eleven months later, on December 29, 2021, Maxwell was convicted on federal sex-trafficking charges relating to her role in Epstein's trafficking operation.

### 4. The District Court orders that all materials concerning Doe 97 and Doe 133 must remain under seal.

At a hearing on November 18, 2022, the District Court decided that judicial documents referring to Doe 97 (CA.180–201, 250–338, 409–64, 538–760, 766–91, 819–952) should remain sealed, claiming it to be a "situation of apparently mistaken identity." SPA.76.

On December 18, 2023, the District Court issued an order holding that excerpts of judicial documents referencing Doe 133 (CA.1–179, 202–49, 339–458, 761–65, 792–1421), should remain under seal. It determined:

J. DOE 133 — This individual's name and identifying information shall

7

remain sealed in full. Plaintiff does not dispute that this Doe was mistakenly identified in a photograph and that this Doe's characterization as an alleged perpetrator was first introduced by a reporter, not by Plaintiff. In addition, this Does has sought to avoid public attention to the allegations. As such, the public interest does not outweigh the privacy interests of this Doe.

SPA.121.

## STANDARD OF REVIEW

In reviewing the District Court's decision to seal or unseal a filing, this Court examines "the court's factual findings for clear error, its legal determinations de novo, and its ultimate decision to seal or unseal for abuse of discretion." *Brown*, 929 F.3d at 47 (internal quotation marks and citation omitted). The determination of whether a document is a judicial document is a legal determination that is reviewed de novo. *United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 134 (2d Cir. 2017).

There is a common-law right of public access to judicial documents, which is based on the need for federal courts to "have a measure of accountability and for the public to have confidence in the administration of justice." *Lugosch v. Pyramid Co. of Onodaga*, 435 F.3d 110, 119 (2d Cir. 2006). "Before any such common law right can attach, however, a court must first conclude that the documents at issue are indeed 'judicial documents.'" *Id.* To be a judicial document, the document "must be relevant to the performance of the judicial function and useful in the judicial

8

process." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*"); *see also Brown*, 929 F.3d at 50. "Relevan[ce] to the performance of the judicial function," therefore, is the "proper inquiry," "not whether [the documents] were relied upon by the court" "in adjudicating a motion." *Brown*, 929 F.3d at 50.

Once the court determines that the documents are judicial documents, a common law right of access attaches, and the court must determine the weight of the presumption. *Lugosch*, 435 F.3d at 119. The weight of the presumption is governed by the role of the material at issue in the exercise of Article III judicial power. *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("*Amodeo II*"). Finally, the court must balance competing considerations against it, including the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure. *Lugosch*, 435 F.3d at 120.

The party seeking to maintain sealing bears the burden of demonstrating that sealing is justified under the First Amendment and common law. *Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 469 (S.D.N.Y. 2017).

## SUMMARY OF ARGUMENT

The District Court erred in several ways throughout the unsealing process. *First*, the District Court erred in categorically finding that all motions and documents attached to motions that were undecided by Judge Sweet were not "judicial documents." The presumption of public access attaches when filed, and not, as the

9

District Court found, when a court issues an opinion or order ruling on a motion. Moreover, these documents—particularly the sealed docket entries relating to the fully-briefed motions *in limine*—had a tendency to influence the district court's ruling, as Judge Sweet held argument spanning several days on the motions and actively considered them. *Second*, the District Court erred in finding that Giuffre's deposition excerpt should remain under seal because it apparently played "no apparent role" in the court deciding the motion. But this Circuit has rejected the proposition that different documents may receive different weights of presumption based on the extent to which they are relied on. Because the deposition excerpt was submitted to the Court, it should have been assumed to play a role in the court's deliberation. *Third*, the District Court also erred in finding that portions of Maxwell's July 2016 deposition transcript should remain redacted. And *fourth*, the District Court erred in allowing Does 97 and 133 to remain redacted because their "mistaken identities" outweighed the public presumption of access.

## ARGUMENT

### A. The District Court erred in finding that motions undecided by Judge Sweet were not "judicial documents."

The District Court erred in categorically finding that all motions and documents attached to motions that were undecided by Judge Sweet were not "judicial documents" and as such did not trigger the public's right to access. In

10

particular, the District Court mistakenly relied on the fact that there was never—and, because of a settlement, can never be—a judicial decision-making process that would trigger the public's right to access.  SPA.7–8.

### 1. Whether or not a court decides a motion has no bearing on the "judicial document" inquiry.

The presumption of public access attaches when filed, and not, as the District Court found, when a court issues an opinion or order ruling on a motion.  When the parties filed their motions, both parties called on the District Court to exercise a judicial function, so these documents were relevant to the performance of the judicial function and useful in the judicial process.  *See Amodeo I*, 44 F.3d at 145; *Brown*, 929 F.3d at 49 ("the item filed must be relevant to the performance of the judicial function and useful in the judicial process to be designated a judicial document") (A.540).  Nothing in the analysis regarding whether a document is a judicial document or not requires that a judicial process actually occur in order for the presumption of public access to attach.

This is evident in the Second Circuit's decision in *Lugosch v. Pyramid Co. of Onondaga*.  435 F.3d 110, 121 (2d Cir. 2006).  In *Lugosch*, the court found documents were judicial documents "by virtue of having been submitted to the court."  *Id.* at 123.  The fact that motions were not decided does not negate the fact that they were filed as advocacy documents with the sole purpose of influencing a

11

judicial decision. *See Schiller v. City of New York*, 2006 WL 2788256, at *4 (S.D.N.Y. Sept. 27, 2006) ("[The] relevance and usefulness [of a brief and its declarations] are demonstrated by the fact that the defendants created and submitted them specifically in order to influence [the court's] determination [of the motion]."). The inquiry is not whether the motion is decided or how it is decided but whether it is relevant to the performance of the judicial function. A document is relevant to the performance of the judicial function "if it would reasonably have the *tendency* to influence a district court's ruling on a motion . . . without regard to whether to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." *Brown*, 929 F.3d at 49 (emphasis in original) (A.541). Our Circuit explicitly rejected the reading that "until a district court knows the disposition of the underlying motion, any attempt at calling something a judicial document is premature." *Lugosch*, 435 F.3d 110 at 121; *see also Schiller*, 2006 WL 2788256, at *5 ("Documents created by or at the behest of counsel and presented to a court in order to sway a judicial decision are judicial documents.").

Finding that undecided motions cannot be judicial documents is incongruent with *Lugosch*. Indeed, *Lugosch* expressly disagreed with the District Court's approach of waiting to resolve a motion to seal until after the underlying motion was decided. This cannot be squared with the District Court's finding. Further, if undecided documents were categorically not judicial documents, the parties would

12

be incentivized to revisit any decisions for motions to seal in cases where a court properly decides motions to seal when filed and the parties then settle the case before underlying motions can be decided. This would be an impermissible outcome and a waste of judicial resources. Here, the District Court had the benefit of hindsight to know that the motions would not be decided because a settlement was reached, but that does not mean that the presumption of public access did not attach when filed. S*ee Gucci Am., Inc. v. Guess?, Inc.*, 2010 WL 1416896, at \*2 (S.D.N.Y. Apr. 8, 2010) (deciding request to seal motion papers prior to ruling on underlying motion).

The District Court differentiated the present case from *Lugosch* because "that case involved the unsealing of materials relevant to a pending motion for summary judgment in active litigation, not motions that were rendered moot by settlement of a case. . . . Indeed, the *Lugosch* court's holding specifically applied to "contested documents." SPA.10 (citing *Lugosch* 435 F.3d at 122–23). But this reading misapplies the Second Circuit's use of the term "contested documents." *Lugosch* states: "[a]s a matter of law, then, we hold that the contested documents—by virtue of having been submitted to the court as supporting material in connection with a motion for summary judgment—are unquestionably judicial documents under the common law." 435 F.3d at 123. However, the Second Circuit refers to the summary judgment motion and related documents as "contested documents" many times throughout *Lugosch*, including in the background section where the Court states that

13

"defendants called into question, *inter alia*, the value of the contested documents to the district court in ruling on the summary judgment motion" and that defendants wrote to the district court "noting that they indeed intended to rely on some of the contested documents at oral arguments." *Id.* at 115. It is clear the Second Circuit used the term "contested documents" to refer to the documents that were the subject of the unsealing motion, not to limit its holding to motions in active litigation.

Many Second Circuit decisions since *Lugosch* and *Amodeo* have rejected the reasoning that the outcome of a motion impacts the judicial document inquiry, including a decision in this case about the same documents. If the Court were to rule that submissions lose their status as judicial documents because the underlying motions remain undecided, that ruling would contradict the holdings in *Brown* that whether a district court relies on a document has no bearing on whether it is a judicial document. *See Brown*, 929 F.3d at 50 ("Insofar as the District Court held that these materials are not judicial documents because it did not rely on them in adjudicating a motion, this was legal error.") (A.544); *see also Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 140 n.3 (2d Cir. 2016) (documents that should have been relied on by the court "are just as deserving of disclosure as those that actually entered into the judge's decision" (quoting *Lugosch*, 435 F.3d at 199)). Instead, "the proper inquiry is whether the documents are relevant to the performance of the judicial function." *Brown*, F.3d at 50 (A.544); *id.* at 49

14

(documents are relevant to the performance of judicial function "if it would reasonably have the tendency to influence a district court's ruling") (A.541).

District courts likewise agree that *Lugosch* requires finding that the presumption of public access attaches when filed. In *Eagle Star Ins. Co. Ltd. v. Arrowood Indem. Co.*, an intervenor sought to unseal a fully briefed motion that was never decided because the parties settled prior. 2013 WL 5322573, at *2 (S.D.N.Y. Sept. 23, 2013). The court found that "[a]t the time of filing . . . the documents attached to that petition, as well as the motion to dismiss were filed for the Court's consideration in ultimately adjudicating the case." *Id.* Therefore, "they are judicial documents." *Id.*; *see also Abidor v. Johnson*, 2016 WL 3102017, at *4 (E.D.N.Y. June 2, 2016).

The District Court disagreed with the approach in *Eagle Star Ins. Co.* and instead relied on *Int'l Equity Investments, Inc. v. Opportunity Equity Partners Ltd.*, 2010 WL 779314 (S.D.N.Y. March 2, 2010), to demonstrate that district courts have disagreed that undecided motions that become moot may still be judicial documents. However, as the District Court acknowledged, the intervenor seeking unsealing in that case conceded the judicial document point and was primarily challenging the presumption against modifying a protective order. SPA.9. So while the *Int'l Equity Investments, Inc.* court addressed the judicial document point on its own, it was not a contested issue that was raised by any of the parties. Further, the case did not make

15

a proclamation about the sealing of any documents that are mooted but made its decision based on the specific documents presented to the court where all parties agreed that the documents were not judicial documents.

The Second Circuit has previously disagreed with the District Court's reading of *Int'l Equity Investments, Inc.* In *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, the district court disagreed with the parties' reliance on three district court cases, including *Int'l Equity Investments, Inc.*, for the proposition that papers not considered by the court and that played no role in an adjudication did not constitute "judicial documents." *Bernstein*, 2016 WL 1071107 at *7 (S.D.N.Y. Mar. 18, 2016), *aff'd*, 814 F.3d 132 (2d Cir. 2016). The court instead found that although the case settled within 45 days of the complaint's filing without any action by the court, the complaint and docket sheet were judicial documents to which the presumption of public access applied. The Second Circuit affirmed and decided that pleadings, even in settled cases, are judicial documents subject to a presumption of public access. *Bernstein*, 814 F.3d at 140. This decision was a natural extension of the judicial document inquiry. Therefore, district courts have also extended this logic beyond pleadings to documents attached to motions. *See Dawson v. Merck & Co.*, 2021 WL 242148, at *6 (E.D.N.Y. Jan. 24, 2021) (documents attached to *Daubert* motion were "judicial documents to which a presumption of access immediately attached and remains attached notwithstanding settlement by the

16

parties").

In short, motions or other materials submitted to the court to influence a judicial decision—even when undecided—are judicial documents.

### 2. Judicial inaction is subject to public accountability.

The District Court based its decision on the perception that the approach in *Int'l Equity Investments, Inc.* aligns more closely with the overarching purpose of the presumption of public access – to monitor judicial decision-making. As this Circuit stated in *Bernstein*, the purpose of public access to judicial records is to ensure "that the federal courts 'have a measure of accountability' and so that the public may 'have confidence in the administration of justice.'" 814 F.3d at 139 (quoting *Amodeo II*, 71 F.3d at 1048). But the administration of justice is not limited to how a court rules on motions: It includes whether or not the court takes action on a motion at all.

Monitoring judicial inaction is as important to the administration of justice and judicial accountability as monitoring judicial opinions. Because of a district court's "inherent 'supervisory power over its own records and files,' even the District Court's inaction is subject to public accountability." *United States v. Erie County*, 763 F.3d 235, 240 (2d Cir. 2014) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)). Allowing the public to access motions and papers that a court has failed to decide (or even consider) holds courts accountable and "would

17

materially assist the public . . . in evaluating the fairness and integrity of the court's proceedings." *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 167 (2d Cir. 2013). For this reason, the Civil Justice Reform Act of 1990 requires the Administrative Office of the United States Courts to prepare a semiannual report summarizing judicial inaction, including motions pending more than six months and civil cases pending more than three years. *See* 28 U.S.C. § 476(a). Therefore, there is a public monitoring function in evaluating the motions that courts do not decide.

### 3. The motions *in limine* and other documents at issue are judicial documents.

The Second Circuit determined in *Brown* that the "[m]aterials submitted in connection with, and relevant to, discovery motions, motions *in limine*, and other non-dispositive motions" are entitled to the presumption of public access. *Brown*, 929 F.3d at 53 (A.550); *id.* at 50 (finding these materials are "of value to those monitoring the federal courts" (internal quotations omitted)) (A.542); *see also Signify Holding B.V. v. TP-Link Rsch. Am. Corp.*, 2022 WL 3704002, at *1 (S.D.N.Y. Aug. 26, 2022) ("Documents submitted for the Court's consideration in relation to a motion to compel discovery are judicial documents."); *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 166 (S.D.N.Y. 2018) (same for motion to compel arbitration); *Alexander Interactive, Inc. v. Adorama, Inc.*, 2014 WL 4346174, at *2 (S.D.N.Y. Sept. 2, 2014) ("[T]he documents to be submitted are in support of a

motion to compel discovery and . . . are, therefore, judicial documents.");

These documents had a tendency to influence the District Court's rulings, and there is evidence in the record that the District Court considered these documents. For example, the record reflects that while Judge Sweet did not rule on certain pretrial motions, he actively considered the contents of those motions and their briefs. Judge Sweet held argument spanning several days on the motions. A.186–483. The motions therefore "can fairly be assumed to [have played] a role in [Judge Sweet's] deliberations" as to other rulings, *see Lugosch*, 435 F.3d at 123, such as rulings on later motions and his endorsement of the parties' Joint Stipulation for Dismissal. A.484–526. Therefore, this Circuit should find that the motions *in limine* and motion to compel filed in this case are judicial documents to which a presumption of public access, whether the motions were decided or not.

Further, this Court should find that the documents should be unsealed as the parties opposing unsealing have not demonstrated that there are competing considerations that outweigh the presumption of access. The weight of the presumption is governed by the role of the material at issue in the exercise of Article III judicial power. *Amodeo II*, 71 F.3d at 1049. While the presumption of access is slightly lower for non-dispositive motions like motions *in limine* or a motion to compel, it is "still substantial." *Brown*, 929 F.3d at 53 (A.550). The party opposing unsealing has the burden of demonstrating that the weight of the presumption is

19

outweighed, and the court "must still articulate specific and substantial reasons for sealing such material." *Brown*, 929 F.3d at 50–51 (A.543). Therefore, it was legal error for the District Court to categorically remove these documents from consideration. Further, many of the documents played a role in the exercise of Article III judicial power during oral argument. Accordingly, the Court should unseal the motions *in limine* and motion to compel.

### B. The District Court erred in finding that Giuffre's deposition transcript should remain under seal.

The District Court also erred in finding that Giuffre's deposition transcript from a Florida state litigation attached to Alan Dershowitz's motion to intervene should remain under seal. It claimed the document "played no apparent role" in Judge Sweet's decision on the motion, so "any presumption of public access to this document is barely cognizable." SPA.77–78. This was error.

The Second Circuit has rejected the proposition that different documents may receive different weights of presumption based on the extent to which they are relied on. *Lugosch*, 435 F.3d at 123. "If the rationale behind access is to allow the public an opportunity to assess the correctness of the judge's decision . . . documents that the judge should have considered or relied upon, but did not, are just as deserving of disclosure as those that actually entered into the judge's decision." *Lugosch*, 435 F.3d at 123 (cleaned up); *see also Eagle Star Ins. Co.*, 2013 WL 5322573, at *3;

20

*Brown*, 929 F.3d at 53 (though "a great deal of relevant material does not ultimately sway [a decisionmaker's] decision," a "still substantial" presumption of access requires the court to articulate "specific and substantial" reasons for sealing) (A.544). *Lugosch* went further to state that the idea that the weight of the presumption should differ according to the extent relied upon "would require the Court to review the documents under varying standards, which would be extremely difficult and a waste of judicial resources." 435 F.3d at 123 (quoting *The Diversified Group, Inc. v. Daugerdas,* 217 F.R.D. 152, 159 n.5 (S.D.N.Y. 2003)). Therefore, it was error for the District Court to base its decision to keep the deposition excerpts under seal on the extent to which the document factored into the court's decision on the motion.

Even if the extent to which a document was relied on should play some role, it is unclear how the District Court concluded that the document played no apparent role in the decision. Instead, because the deposition transcript was submitted to the District Court, it should have been assumed to play a role in the court's deliberation. *See Lugosch*, 435 F.3d at 122 (citing *F.T.C. v. Standard Fin. Mgmt. Corp.,* 830 F.2d 404, 409 (1st Cir. 1987)) ("[o]nce those submissions come to the attention of the district judge, they can fairly be assumed to play a role in the court's deliberations."). As an attachment to a motion to intervene, the District Court should have found there was a presumption of access, albeit slightly less than for a motion for summary

21

judgment and balanced against any competing considerations against the presumption of access. *McKoy v. Trump Corp.*, 2024 WL 449979, at *4 (S.D.N.Y. Feb. 6, 2024) (finding a motion to intervene was entitled to a presumption of access and that the intervenor's vague and conclusory bases for sealing did not provide sufficient competing considerations to file the motion under seal). Therefore, this Court should find that the District Court erred in maintaining the deposition excerpt under seal.

> **C.    The District Court erred in finding that Maxwell's July 2016 deposition should remain under seal.**

The District Court also erred in finding that portions of Maxwell's July 2016 deposition transcript (CA.465–537) should remain redacted because Maxwell's countervailing interests in resisting disclosure of her private, intimate relationships with consenting adults outweighed the presumption of public access and the factual consideration that the testimony was not related to the sex trafficking and abuse cases. SPA.21–22. The District Court found that "the presumption of public access does attach to this transcript" though to a lesser extent than if it were submitted with a dispositive motion. SPA.21.

Maxwell had minimal privacy interests because the redacted material involved a relationship that is central to the dispute and has already been widely reported in the media. "Once the weight of the presumption is determined, a court

must balance competing considerations against it." *Amodeo II*, 71 F.3d at 1050. These countervailing factors include the "the privacy interests of those resisting disclosure." *Id.* When evaluating privacy interests, "courts should first consider the degree to which the subject matter is traditionally considered private rather than public." *Id.* at 1051. Courts should also consider "the nature and degree of injury" and whether "there is a fair opportunity for the subject to respond to any accusations contained therein. *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 232 (2d Cir. 2001). Privacy interests are generally limited to documents containing "medical or psychological information about the named individual . . . [or] bank account numbers, social security numbers and information the disclosure of which could raise a personal safety issue." *Nycomed US Inc. v. Glenmark Generics, Inc.*, 2010 WL 889799, at *8 (E.D.N.Y. Mar. 8, 2010) (internal quotations omitted). "[T]he mere broad and general invocation of a privacy interest does not warrant" sealing. *Guzik v. Albright*, 2018 WL 6011612, at *3 (S.D.N.Y. Nov. 16, 2018) (internal quotations and alterations omitted).

This is not a case where a deponent was asked inappropriate or irrelevant questions about her intimate relationships; on the contrary, Maxwell was asked questions concerning ███████████████████████████████████████ ███████████████████████████████████████. *See United States v. Maxwell*, 2022 WL 1294433, at *1 (S.D.N.Y. Apr. 29, 2022) (summarizing her criminal trial); see

23

also *United States v. Maxwell*, 545 F. Supp. 3d 72, 80 (S.D.N.Y. 2021) (finding

Maxwell had no reasonable expectation of privacy in deposition transcripts). The

deposition excerpts largely amount to Maxwell's answers to questions regarding ███

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████[5] These questions also involved charges

that she ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████ *Id.* Many of the redacted questions are directly related to ███

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

---

[5] Press Release, United States Attorney's Office Southern District of New York, *Ghislaine Maxwell Sentenced To 20 Years in Prison for Conspiring With Jeffrey Epstein To Sexually Abuse Minors* (Jun. 28, 2022), https://www.justice.gov/usao-sdny/pr/ghislaine-maxwell-sentenced-20-years-prison-conspiring-jeffrey-epstein-sexually-abuse.

████████████████████████████████████████████

████ .  Even the material that involves the most prurient details primarily involve

████████████████████████████████████████████

████ .

     The District Court's finding that the testimony about her private, consensual relationships are "far afield from the sex trafficking and sexual abuse allegations" central to this dispute was clear error.  SPA.22.  Maxwell's role in a scheme and conspiracy to sexually abuse minor girls with Jeffrey Epstein was intertwined with her relationship with Epstein.  Courts allow testimony about the relationship between co-conspirators particularly where, as here, the testimony is relevant to behaviors that provide context to the relationship between the conspirators and victims.  *See, e.g., United States v. O'Connor*, 650 F.3d 839, 844–45 (2d Cir. 2011) (describing testimony about the relationship between defendant and "sex partner" where defendant allowed "sex partner" to engage in sex acts with her victim daughter); *United States v. Hart*, 91 F.4th 732, 742 (4th Cir. 2024) (finding testimony by former codefendant regarding defendant's behavior to her was relevant in sex trafficking trial in helping to explain how defendant behaved towards others).

     Further, when weighing the impact of unsealing against the nature and degree of injury or whether there is a potential safety issue, Maxwell's privacy interests do not outweigh the presumption of access.  This information has already largely been

25

reported and made public, meaning there is very little risk of injury or a safety issue. *See TheStreet.Com*, 273 F.3d at 232. Indeed, months after the District Court's order, Maxwell was convicted and sentenced to 20 years in prison for events that were connected to the testimony in the deposition transcript. Finally, Maxwell has had ample opportunity to respond to any accusations, including in this case and her criminal case.

Even if Maxwell did have a privacy interest and some of the redactions are necessary to protect those interests, the deposition excerpts are overly redacted in light of the public's presumed right to access this judicial document. The redacted material involves factual information about locations, individuals, and key events or information that is already public knowledge (including Maxwell's federal conviction on sex-trafficking charges relating to the exact subject matter of this case). *See, e.g.*, CA.467–70, 473, 501, 503. Accordingly, this Court should find that the District Court erred in maintaining this deposition excerpt under seal because of Maxwell's privacy concerns and find that Maxwell did not meet her burden in opposing unsealing the transcript so that the deposition transcripts should be unsealed. Even if this Court were to find that some parts of the transcript should have been redacted, the transcript is overly redacted, and Maxwell should be required to file the transcript with more limited redactions.

**D.    The District Court erred in finding that the public's presumption of access was outweighed because of "mistaken" identities.**

The District Court erred in allowing Does 97 and 133 to remain redacted because their "mistaken identities" outweighed the public presumption of access. The District Court determined Doe 97 would remain under seal because "[t]his is a situation of apparently mistaken identity." SPA.76.  For Doe 133, the District Court kept the individual's name under seal because "Plaintiff does not dispute that this Doe was mistakenly identified in a photograph and that this Doe's characterization as an alleged perpetrator was first introduced by a reporter, not by Plaintiff.  In addition, this Doe has sought to avoid public attention to the allegations." SPA.121.

First, on Doe 97, the District Court does not specify the basis on which it concluded this was a case of "apparently mistaken identity." SPA.76.  The Court likely relied on Doe 97's own objections that he ███████████████████████ ██████████████████████████████. CA.1422–31.  He further claims that he ██████████████████████████ ██████████████ CA.1432–33.  However, Giuffre has never agreed that this was a case of mistaken identity.  Giuffre only testified that she ███████████ ██████████████████████████████████████████████ ██████████████████████████. She confirmed that she ███ ██████████████████████████████████████████████

27

█████████████████████████████████████████████. CA.562:6–

565:1.  In other excerpts, Giuffre confirmed that ████████████████████████

████████████████ (CA.188:13–15) and testified numerous times that ████████

████████████████ (CA.299–301).  At no time during testimony or in briefing

concerning Doe 97 (CA.1434–1445) did Giuffre claim she was mistaken about Doe

97's identity.

Similarly, the District Court based its decision on Doe 133's claim that he was

mistakenly identified.  SPA.121; *see also* CA.1446–82.  Like Doe 97, the District

Court appeared to find this convincing because of his claim that he was mistakenly

identified in a photograph and that this Doe's characterization as an alleged

perpetrator was first introduced by a reporter, not by Giuffre.  SPA.121.  However,

as with Doe 97, Giuffre never agreed that Doe 133 was mistakenly identified.  CA.

1465–73.  Regardless of whether Giuffre or a reporter brought up Doe 133's name

first, that has no bearing on whether they should be protected from unsealing.

Even if either Doe were mistakenly identified (they were not), a privacy

concern because of a mistaken identity is not a valid ground for continued sealing.

Doe 97 and Doe 133 did not provide any privacy interest beyond generalized

concerns about adverse publicity from this alleged "mistake."  This conflicts with

precedent in this Circuit and the District Court's own finding.  *Prescient Acquisition*

*Grp., Inc. v. MJ Pub. Tr.,* 487 F. Supp. 2d 374, 376 (S.D.N.Y. 2007) ("a generalized

concern of adverse publicity concerning a public figure is [not] a sufficiently compelling reason that outweighs the presumption of access."); *see also* SPA.75 (unsealing references in deposition to "Doe 144, Tom Pritzker" because "[t]he document merely shows that a witness did not recall meeting a, quote, Tom Pritzker," but leaving sealed preceding question asking same of Doe 133 (*compare* CA.1262:18–19 *with* CA.1262:25–1262:2)). The possibility of future adverse impact or negative publicity is insufficient to outweigh a presumption of public access. *See Prescient Acquisition Grp., Inc.*, 487 F. Supp. 2d at 375 (rejecting opposition to unsealing on the basis that the celebrity status of Michael Jackson would make portions of the record "subject to sensational media accounts").

Nowhere in the standard for sealing documents are courts asked to rule on the reliability of the information or the veracity of testimony. In fact, allegations filed with the Court are not proven when filed. Allowing alleged perpetrators to seal mention of their name because they argue that the claims are unreliable or wrong would allow defendants and non-parties that are implicated in alleged wrongdoing to ask that courts engage in a mini-trial while keeping their names under seal. And it would permit sealing in *any case* in which someone was accused of wrongdoing that they denied. Even if the Court were to unseal the documents, Does 97 and 133 have plenty of opportunities to contest accusations against them, including in public opposition briefs. *See Amodeo II*, 71 F.3d at 1051 ("Similarly, a court may consider

29

whether the nature of the materials is such that there is a fair opportunity for the subject to respond to any accusations contained therein.").

While the District Court seemed to place particular importance on the fact that the Does sought to avoid public attention of the allegations, this has no bearing on whether the public interest outweighs the privacy interests of the Doe.  At any rate, both names have already been publicized by this Circuit in prior court filings and by the media.  *See, e.g.,* ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████  The fact that this is already public weighs against continued sealing. *United States v. Avenatti*, 2020 WL 70952, at *6 (S.D.N.Y. Jan. 6, 2020) ("In considering whether sealing is appropriate, an important consideration is, of course,

whether the information sought to be kept confidential is already public.").

Therefore, the District Court clearly erred in its weighing of the privacy interests of these Does against the presumption of public access.

## CONCLUSION

For the foregoing reasons, the District Court erred in its orders maintaining sealing and must be reversed.


Dated:  April 17, 2024            Respectfully submitted,
            New York, New York


By: */s/ Sigrid S. McCawley*
        Sigrid S. McCawley
        Boies Schiller Flexner LLP
        401 East Las Olas Blvd., Suite 1200
        Fort Lauderdale, FL 33301
        Telephone: (954) 356-0011
        Facsimile:  (954) 356-0022

        *Counsel for Plaintiff-Appellee*
        *Virginia L. Giuffre*

31

## CERTIFICATE OF SERVICE

I certify that on April 17, 2024, I served a copy of Plaintiff-Appellant's Brief

via ACMS, which will send notification of the filing to all counsel of record.

Dated: April 17, 2024
      New York, New York

                        By: */s/ Sigrid S. McCawley*
                                Sigrid S. McCawley

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(b) and L.R. 32.1(a)(4). It contains 7,395 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6). It has been prepared in proportionally spaced typeface using Microsoft Word in 14 pt. Times New Roman.

Dated: April 17, 2024
　　　 New York, New York

By:  */s/ Sigrid S. McCawley*　　
　　　 Sigrid S. McCawley