# No. 24-182-cv(L), 24-203-cv(CON)

————————————

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

————————————

VIRGINA GIUFFRE,
*Plaintiff-Appellant,*

JULIE BROWN, MIAMI HERALD MEDIA COMPANY,
*Intervenors-Appellants,*

v.

GHISLAINE MAXWELL,
*Defendant-Appellee,*

————————————

(*Caption Continued on Next Page*)

————————————

Appeal from the U.S. District Court for the Southern District of New York
Case No. 15 Civ. 7433 (LAP)

————————————

# Brief for Defendant-Appellee Ghislaine Maxwell

————————————

Adam Mueller
HADDON, MORGAN & FOREMAN, P.C.
950 17th Street, Suite 1000
Denver, CO 80202
Tel 303.831.7364
amueller@hmflaw.com

JOHN DOE 17, JOHN DOE 73,
*Appellees,*

SHARON CHURCHER, JEFFREY EPSTEIN,
*Respondents,*

TGP COMMUNICATIONS, LLC, ALAN M. DERSHOWITZ, MICHAEL
CERNOVICH, DBA CERNOVICH MEDIA, UNITED STATES VIRGIN
ISLANDS,
*Intervenors.*

# Table of Contents

Table of Authorities ..................................................................................iv

Jurisdiction ............................................................................................1

Issues Presented for Review .....................................................................1

Statement of the Case and the Facts ........................................................ 2

I.   The district court defamation action. ............................................... 2

II.  The decision in *Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019). ..........3

III. The remand unsealing proceedings. ................................................. 4

Summary of the Argument ...................................................................... 6

Standard of Review ................................................................................ 8

The Public's Right of Access .................................................................. 9

Argument.............................................................................................14

I.   This Court lacks jurisdiction to review the district court's January 13, 2020 order, which limited the unsealing review to "only motions actually decided by Judge Sweet--along with documents relevant to Judge Sweet's decision on those motions." .......................................................................14

II.  Assuming this Court has jurisdiction to review the January 13, 2020 order, the district court properly limited the unsealing review to "only motions actually decided by Judge Sweet--along with documents relevant to Judge Sweet's decision on those motions."..........................................................18

   A.  The district court correctly ruled that the undecided motions were not judicial documents. ..................................................................18

   B.  The Herald's and Giuffre's contrary arguments lack merit.......................21

   C.  If the district court erred, a remand is the appropriate remedy.................24

i

III. The district court did not abuse its discretion in maintaining under seal the unredacted version of Ms. Maxwell's July 2016 deposition transcript.............25

    A. This Court's mandate in *Brown* compelled the district court's decision....26

        1. Background......................................................................26

        2. Analysis..........................................................................27

    B. The presumption of access to the deposition transcript is little more than a prediction of access.................................................................28

    C. The district court did not clearly err in concluding that Ms. Maxwell's privacy interests outweighed any minimal presumption of access. ............29

    D. The district court's rejection of Ms. Maxwell's other arguments proves its decision was carefully calibrated. ...........................................32

IV. The district court did not abuse its discretion in declining to unseal Giuffre's state-court deposition transcript. ......................................................33

V. The district court did not abuse its discretion in declining to unseal the material involving Does 17, 93, 97, and 133. ..................................................35

    A. Doe 133..........................................................................36

        1. Giuffre and the Herald misconstrue the district court's holding and ignore the specific and substantial reasons supporting Doe 133's privacy interests. ............................................................37

        2. Giuffre and the Herald point to no clear error. ..........................41

        3. The district court's narrow ruling to redact only Doe 133's name is squarely within the range of permissible decisions. ................................43

    B. Doe 17 and Doe 97. ...........................................................44

    C. Doe 93. ........................................................................46

    D. Ms. Maxwell takes no position on the district court's decision not to unseal the material involving Does 12, 58, 73, or 124.............................47

ii

VI. The district court did not abuse its discretion in declining to unseal Docket Entry 1026-3, an inaccurate, incomplete, and outdated list of the identities of the Jane and John Does. ................................................................... 47

Conclusion ................................................................................................. 50

Certificate of Compliance with Rule 32 ............................................... 52

Certificate of Service ............................................................................... 53

# Table of Authorities

**Cases**

*Allianz Ins. v. Lerner*,
    416 F.3d 109 (2d Cir. 2005) .................................................................. 48

*Anderson v. City of Bessemer City*,
    470 U.S. 564 (1985) ........................................................................... 9, 30

*Application of Newsday, Inc.*,
    895 F.2d 74 (2d Cir. 1990) ...................................................................38

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*,
    814 F.3d 132 (2d Cir. 2016) .............................................................. 22

*Brown Shoe Co. v. United States*,
    370 U.S. 294 (1962) .............................................................................18

*Brown v. Maxwell*,
    929 F.3d 41 (2d Cir. 2019) ..........................................................passim

*Cohen v. Beneficial Indus. Loan Corp.*,
    337 U.S. 541 (1949) .............................................................................14

*DiRussa v. Dean Witter Reynolds Inc.*,
    121 F.3d 818 (2d Cir. 1987) .............................................................. 42

*Doe 107 v. Giuffre*,
    No. 22-3042, 2023 WL 4926195 (2d Cir. Aug. 2, 2023) ................... 4, 16, 25, 35

*Doe 171 v. Giuffre*,
    No. 22-3050, 2023 WL 4926196 (2d Cir. Aug. 2, 2023) ...................... 4, 16, 48

*Doe v. Lerner*,
    688 Fed. Appx. 49 (2d Cir. 2017) ................................................... 15

*Doe v. Menefee*,
    391 F.3d 147 (2d Cir. 2004) ........................................................... 9, 30

iv

*Franklin v. McHugh*,
  804 F.3d 627 (2d Cir. 2015) ........................................................ 8, 14, 15, 18

*Gambale v. Deutsche Bank AG*,
  377 F.3d 133 (2d Cir. 2004) .................................................................. 8

*Gillespie v. U.S. Steel Corp.*,
  379 U.S. 148 (1964) ...........................................................................16

*Giuffre v. Maxwell*,
  827 Fed. Appx. 144 (2d Cir. 2020) ....................................................16, 32, 34

*Hartford Courant Co. v. Pellegrino*,
  380 F.3d 83 (2d Cir.2004) ..................................................................... 11

*In re Agent Orange Prod. Liab. Litig. MDL No. 381*,
  818 F.2d 179 (2d Cir. 1987) .................................................................. 15

*In re Joint E. & S. Dist. Asbestos Litig.*,
  14 F.3d 726 (2d Cir. 1993 ....................................................................23

*In re Roman Catholic Diocese of Albany*,
  745 F.3d 30 (2d Cir. 2014) ................................................................... 15

*Joy v. North*,
  692 F.2d 880 (2d Cir. 1982) ..................................................................30

*LaForest v. Honeywell Intern. Inc.*,
  569 F.3d 69 (2d Cir. 2009) ................................................................20, 23

*Lugosch v. Pyramid Co. of Onondaga*,
  435 F.3d 110 (2d Cir. 2006)............................................................passim

*Matter of N.Y. Times Co.*,
  828 F.2d 110 (2d Cir. 1987) ............................................................... 31, 43

*Mirlis v. Greer*,
  952 F.3d 51 (2d Cir. 2020) ............................................................... 11, 44

v

*Muskrat v. United States*,
219 U.S. 346 (1911) ............................................................... 20

*N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*,
684 F.3d 286 (2d Cir. 2012) .............................................. 10

*Newsday LLC v. Cnty. of Nassau*,
730 F.3d 156 (2d Cir. 2013) .................................... 9, 10, 12

*Nixon v. Warner Commc'ns, Inc.*,
435 U.S. 589 (1978) .......................................... 8, 10, 32, 46

*Radio Station WOW v. Johnson*,
326 U.S. 120 (1945) ....................................... 16, 17, 18

*S.E.C. v. TheStreet.Com*,
273 F.3d 222 (2d Cir. 2001) .......................................... 14

*Stafford v. Int'l Bus. Machs. Corp.*,
78 F.4th 62 (2d Cir. 2023) ............................................ 10

*Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*,
621 F. Supp.2d 55 (S.D.N.Y. 2007) .............................. 19

*United States v. Amodeo*,
44 F.3d 141 (2d Cir. 1995) .............................. 11, 19, 21, 24

*United States v. Amodeo*,
71 F.3d 1044 (2d Cir. 1995) ............................... passim

*United States v. Cohen*,
366 F. Supp. 3d 612 (S.D.N.Y. 2019) ................ 40, 41, 44, 46

*United States v. Donato*,
714 Fed. Appx. 75 (2d Cir. 2018) .................................. 44

*United States v. Graham*,
257 F.3d 143 (2d Cir. 2001) ........................... 13, 27, 29, 35

vi

*United States v. Halvon,*
    26 F.4th 566 (2d Cir. 2022) ..............................................................46

*United States v. HSBC Bank USA, N.A.,*
    863 F.3d 125 (2d Cir. 2017) .............................................. 11, 12, 15, 21

*United States v. Maxwell,*
    545 F. Supp. 3d 72 (S.D.N.Y. 2021) ............................................... 31

*United States v. Mendonca,*
    88 F.4th 144 (2d Cir. 2023) ............................................................ 48

*United States v. Quintieri,*
    306 F.3d 1217 (2d Cir. 2002) ........................................................27

*United States v. Silver,*
    No. 15-CR-93 (VEC), 2016 WL 1572993 (S.D.N.Y. Feb. 23, 2016) ................38

*Wills v. Amerada Hess Corp.,*
    379 F.3d 32 (2d Cir. 2004) ...............................................9, 45, 47, 50

*Zervos v. Verizon N.Y., Inc.,*
    252 F.3d 163 (2d Cir. 2001) ...................................................... 8, 45, 47

## Other Authorities

28 U.S.C. § 1291 .............................................................................14

Craig A. Stern, *What's a Constitution Among Friends?*
    *Unbalancing Article III*, 146 U. Pa. L. Rev. 1043 (1998) .................................. 20

U.S. Const. art. III ..........................................................................19

Wright & Miller, 15A Fed. Prac. & Proc. Juris.,
    *Leading Finality Decisions*, (3d ed. June 2024 Update)...............................17, 18

## Rules

Fed. R. App. P. 4...........................................................................14, 15

Fed. R. App. P. 4(a)(1)(A) ................................................................15, 18

Fed. R. Civ. P. 5.2 ...........................................................................27

Fed. R. Civ. P. 52(a)(6) ...................................................................41

# Jurisdiction

This Court has jurisdiction to review the district court's decisions to maintain under seal (1) Ms. Maxwell's unredacted July 2016 deposition transcript, (2) Giuffre's state-court deposition transcript, and (3) the material involving Does 12, 17, 58, 73, 93, 97, 124, and 133. This Court also has jurisdiction to review the district court's decision to maintain under seal the list of Does.

This Court lacks jurisdiction, however, to review the district court's January 13, 2020 order, which categorically limited the unsealing process to "only motions actually decided by Judge Sweet--along with documents relevant to Judge Sweet's decision on those motions." [SPA 3.][1] That decision was a final judgment when entered, and because neither Giuffre nor the Miami Herald filed a notice of appeal within thirty days, there is no appellate jurisdiction over that order.

# Issues Presented for Review

1. Whether this Court has jurisdiction to review the district court's January 13, 2020 order, which was not appealed within thirty days of entry.

2. Whether, assuming this Court has jurisdiction to review the January 13, 2020 order, the district court erred in determining that documents attached to

---

[1] Ms. Maxwell will follow Giuffre's record citation conventions. [Giuffre Br., p 3 n.1.] "SPA" refers to the Special Appendix, "CA" refers to the Confidential Appendix, and "DE" refers to Docket Entries from the District Court.

1

undecided motions were not judicial documents subject to a presumptive right of access.

3.   Whether the district court abused its discretion in maintaining under seal the unredacted version of Ms. Maxwell's July 2016 deposition transcript.

4.   Whether the district court abused its discretion in declining to unseal Giuffre's state-court deposition transcript.

5.   Whether the district court abused its discretion in declining to unseal the material involving Does 17, 93, 97, and 133.[2]

6.   Whether the district court abused its discretion in declining to unseal Docket Entry 1026-3, an inaccurate, incomplete, and outdated list of the identities of the Jane and John Does.[3]

## Statement of the Case and the Facts

### I.  The district court defamation action.

This case began in 2015 when Plaintiff Virgina Giuffre sued Ghislaine Maxwell for defamation. Giuffre claimed that Ms. Maxwell defamed her when Ms.

---

[2] Ms. Maxwell takes no position on whether the district court erred in declining to unseal the material involving Does 12, 58, 73, or 124. *Infra* Part V.D.

[3] Ms. Maxwell takes no position on the Herald's argument that the district court should create a public record of its communications with the non-parties including redacted versions of those communications, consistent with its unappealed rulings on sealing and this Court's determinations on appeal. [*See* Herald Br., p 35.]

Maxwell's publicist issued a public statement (1) stating that Ms. Giuffre's allegations "against Ghislaine Maxwell are untrue;" (2) the allegations have been "shown to be untrue;" and (3) her "claims are obvious lies."

Over the next two years, the parties engaged in vigorous litigation, which concluded only after Judge Sweet denied Ms. Maxwell's motion for summary judgment and the parties settled the case shortly before trial. The case was dismissed with prejudice on May 24, 2017 and closed the next day.

Nearly one year later, on April 9, 2018, the Herald moved to intervene in the case and to unseal the *entire* docket.

The district court granted the motion to intervene, but it denied the motion to unseal. Giuffre and the Herald both appealed.

## II.  The decision in *Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019).

In *Brown v. Maxwell*, this Court reversed Judge Sweet's order denying the motion to unseal. 929 F.3d at 44. This Court ruled that the materials submitted in connection with Ms. Maxwell's summary judgment motion were—as a matter of law—judicial documents to which a presumption of access attached. *Id.* at 47. The Court unsealed those documents themselves while redacting material about Ms. Maxwell "concerning intimate matters where the questions were likely only permitted—and the responses only compelled—because of a strong expectation of

3

continued confidentiality." *Brown*, 929 F.3d at 48 n.22. This Court made the summary judgment material available on its public docket. *Id.* at 48 & n.22.

As for the other material at issue, this Court remanded to the district court to conduct further proceedings. *Id.* at 51.

**III. The remand unsealing proceedings.**

Because Judge Sweet passed away during the first appeal, Judge Preska took over the case on remand.

Judge Preska first ruled on January 13, 2020 that "only motions actually decided by Judge Sweet--along with documents relevant to Judge Sweet's decisions on those motions--are properly considered judicial documents to which a presumption of public access attaches." [SPA 3]. Judge Preska therefore did not conduct a particularized review of the motions that had not been decided at the time the case settled. [SPA 1-2; SPA 3-13.]

Judge Preska then organized a comprehensive protocol to conduct the particularized review ordered by this Court. When Judge Preska ordered certain material unsealed as part of that protocol, some Does appealed. This Court affirmed Judge Preska in *Doe 171 v. Giuffre*, No. 22-3050, 2023 WL 4926196, at *1 (2d Cir. Aug. 2, 2023), and remanded for further findings in *Doe 107 v. Giuffre*, No. 22-3042, 2023 WL 4926195, at *1 (2d Cir. Aug. 2, 2023).

4

On December 18, 2023, after three years of hard work, Judge Preska completed her particularized review of the non-summary judgment judicial documents. [SPA 86-136.]

On January 4, 2024, the Herald moved to partially unseal the list of names of the Does with their pseudonymous number identifier. [A 618-19.] Judge Preska denied that motion. [SPA 137-139].

Giuffre and the Herald now appeal, challenging Judge Preska's discretionary decision not to unseal (1) Ms. Maxwell's unredacted July 2016 deposition transcript, (2) Giuffre's state-court deposition transcript, and (3) the material involving Does 12, 17, 58, 73, 93, 97, 124, and 133.

Giuffre and the Herald also try to appeal Judge Preska's threshold decision (from nearly five years ago) categorically limiting the unsealing process to "only motions actually decided by Judge Sweet--along with documents relevant to Judge Sweet's decisions on those motions." [SPA 3.]

For its part, the Herald separately appeals Judge Preska's decision not to unseal (1) a document purportedly identifying the John and Jane Does and (2) the submissions from the Does and related communications.

5

## Summary of the Argument

1.    This Court lacks jurisdiction to review the district court's January 13, 2020 order, which was not appealed within thirty days of entry. Because that order effectively separated the case into two—one case concerning the undecided motions that reached a final judgment on January 13, 2020, and a second case concerning the decided motions that continued until December 18, 2023—the January 13, 2020 order was itself a final judgment and not a collateral order. The appeal of that final judgment is too late.

2.    Assuming this Court has jurisdiction to review the January 13, 2020 order, the district court did not err in determining that documents attached to undecided motions were not judicial documents subject to a presumptive right of access. Those documents are completely irrelevant to the judicial function and the judicial process under Article III. Because the underlying case settled, the undecided motions not only are "unadjudicated—they are unadjudicable."

3.    The district court did not abuse its discretion in maintaining under seal Ms. Maxwell's unredacted July 2016 deposition transcript. To the contrary, its decision was mandated by this Court's ruling in the first appeal, which redacted from that transcript Ms. Maxwell's testimony "concerning intimate matters where the questions were likely only permitted—and the responses only compelled—

6

because of a strong expectation of continued confidentiality." *Brown*, 929 F.3d at 48 n.22. The district court redacted exactly the same type of material as this Court, and in the context of a document with a less weighty presumption of public access. But even if the mandate rule did not compel that decision, it surely wasn't an abuse of discretion. The district court identified and applied the correct law, made factual findings with abundant record support—the parties all agree clear error review applies—and reached a result within the range of permissible choices.

4. The district court did not abuse its discretion in declining to unseal Giuffre's state-court deposition transcript. Giuffre points to no legal error in the district court's decision, and she does nothing to prove any clearly erroneous factual findings.

5. The district court did not abuse its discretion in declining to unseal the material involving Does 17, 93, 97, and 133. The court properly identified the lower presumption of public access that applies to this material and, after making uncontested factual findings, reasonably concluded on balance that the material should be maintained under seal.

6. The district court did not abuse its discretion in declining to unseal Docket Entry 1026-3, an inaccurate, incomplete, and outdated list of the identities of the Jane and John Does. On appeal, the Herald abandons its request to unseal

7

Docket Entry 1026-3 and, instead, asks this Court to unseal a different document. But the Herald forfeited that argument by never presenting it to Judge Preska. And in any event, the district court had ample cause to keep the list of Does under seal. In particular, as the district court found, everything the Herald wants to know about the unsealed Does is already available in the unsealed filings.

## Standard of Review

Whether this Court has jurisdiction is a question of law. *Franklin v. McHugh*, 804 F.3d 627, 629 (2d Cir. 2015) (dismissing appeal for lack of jurisdiction when notice of appeal was not timely filed).

On the merits, "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978). This Court reviews for an abuse of discretion the district court's denial of a motion to unseal. *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 139 (2d Cir. 2004).

Abuse-of-discretion review is "deferential appellate review." *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 168 (2d Cir. 2001). When a district court identifies and applies the correct law, makes factual findings that have record support, and issues a ruling within the range of permissible decisions, there can be no abuse of

8

discretion. *Id.* at 168–69 (finding no abuse of discretion). A district court's discretionary decision is impermissible only when it is "manifestly erroneous." *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 41 (2d Cir. 2004).

Finally, this Court reviews factual findings for clear error. *Doe v. Menefee*, 391 F.3d 147, 163 (2d Cir. 2004). "Clear error review permits only limited reexamination of factual findings where 'the district court's account of the evidence is plausible in light of the record viewed in its entirety.'" *Id.* at 163–64 (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985)). As Giuffre and the Herald concede, clear error review applies to the district court's identification of countervailing interests (such as Ms. Maxwell's privacy interest) that justify continued redactions or continued sealing. [Giuffre Br, p 25; Herald Br., p 9.]

## The Public's Right of Access

There are "two related but distinct presumptions in favor of public access to court proceedings and records: a strong form rooted in the First Amendment and a slightly weaker form based in federal common law." *Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 163 (2d Cir. 2013). These presumptions exist because of the "need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have

9

confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*").

A presumption of access, however, is just that: a presumption. There is no absolute right of access, and the presumption, when it applies, can always be rebutted. *Newsday*, 730 F.3d at 164. "What offends the First Amendment is the attempt to [exclude the public] without sufficient justification," not the act of exclusion itself. *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 296 (2d Cir. 2012) ("*NYCTA*"); *see Newsday*, 730 F.3d at 165. Indeed,

> [e]very court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes. For example, the common-law right of inspection has bowed before the power of a court to insure that its records are not used to gratify private spite or promote public scandal… [and when its] files . . . serve as reservoirs of libelous statements for press consumption.

*Nixon*, 435 U.S. at 598 (cleaned up).

"This Court's law regarding sealing is 'largely settled.'" *Stafford v. Int'l Bus. Machs. Corp.*, 78 F.4th 62, 69 (2d Cir. 2023) (citing *Brown*).

> First, the court determines whether the record at issue is a judicial document—a document to which the presumption of public access attaches. Second, if the record sought is determined to be a judicial document, the court proceeds to determine the weight of the presumption of access to that document. Third, the court must identify all of the factors that legitimately counsel against disclosure of the judicial document and balance those factors against the weight properly accorded the presumption of access.

10

*Id.* at 69-70 (quoting *Mirlis v. Greer*, 952 F.3d 51, 59 (2d Cir. 2020)) (cleaned up).

The threshold question is whether the records qualify as "judicial documents." *United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 134 (2d Cir. 2017) ("The threshold merits question in this case is whether the Monitor's Report is a judicial document, as only judicial documents are subject to a presumptive right of public access, whether on common law or First Amendment grounds."); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) ("Before any such common law right can attach, however, a court must first conclude that the documents at issue are indeed 'judicial documents.'"); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir.2004) (recognizing that there is a "qualified First Amendment right to attend judicial proceedings and to access *certain judicial documents*" (emphasis added)). "In order to be designated a judicial document, 'the item filed must be relevant to the performance of the judicial function and useful in the judicial process.'" *Lugosch*, 435 F.3d at 119 (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*")). "[T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *Amodeo I*, 44 F.3d at 145.

In considering whether a record qualifies as a "judicial document," a court must "determine the degree of judicial reliance on the document in question and the relevance of the document's specific contents to the nature of the proceeding." *Newsday*, 730 F.3d at 166–67. The filing with the court of "deposition transcripts, interrogatories, and documents exchanged in discovery" does not, from that fact of filing alone, convert the transcripts, interrogatories, and discovery documents into "judicial documents" for purposes of the right to access. *HSBC Bank USA*, 863 F.3d at 139. Nor does the "mere fact that a dispute exists about whether a document should be sealed or disclosed" render the disputed document a judicial document. *Newsday*, 730 F.3d at 167. Were the rule otherwise, it "would bootstrap materials that are not closely related to judicial proceedings into judicial documents." *Id.*

When a filing qualifies as a judicial document triggering the presumptive right of access, a court must then determine the weight to be afforded to the presumption and then balance the interest in access against competing considerations. *Amodeo II*, 71 F.3d at 1050. The former question turns on "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* at 1049. "Generally, the information will fall somewhere on a continuum from matters that

12

directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id.*

That is why, in *Brown*, this Court held that the summary judgment materials were subject to a strong presumption of access that could not be overcome even though the district court denied the summary judgment motion. *Brown*, 929 F.3d at 48 (presumption of public access attaching to documents filed in connection with summary judgment motions is not diminished by fact that motion is denied). "[D]ocuments submitted to a court for its consideration in a summary judgment motion are—as a matter of law—judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment." *Id.* at 47.

By contrast, the public interest in accessing documents that do not "directly affect an adjudication" or "play a significant role in determining litigants' substantive rights" is "not as pressing." *United States v. Graham*, 257 F.3d 143, 153 (2d Cir. 2001). When the documents "play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of access absent a countervailing reason." *Lugosch*, 435 F.3d at 121 (quotation omitted).

13

"Once the weight of the presumption is determined, a court must balance competing considerations against it." *Amodeo II*, 71 F.3d at 1050. Competing considerations include, but are not limited to, the right to privacy and the reliance interests of those resisting disclosure. *Brown*, 929 F.3d at 47 n.13 (privacy), 48 n.22 (reliance); *Amodeo II*, 71 F.3d at 1050 (privacy); *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 229–31 (2d Cir. 2001) (reliance).

## Argument

**I.   This Court lacks jurisdiction to review the district court's January 13, 2020 order, which limited the unsealing review to "only motions actually decided by Judge Sweet--along with documents relevant to Judge Sweet's decision on those motions."**

Generally, this Court only has jurisdiction to review final judgments. 28 U.S.C. § 1291. A party must appeal any final judgment within the time provided by Federal Rule of Appellate Procedure 4, lest this Court lack jurisdiction over the appeal. *Franklin*, 804 F.3d at 632.

A party normally may *not* immediately appeal an order that does not qualify as a final judgment. 28 U.S.C. § 1291. An exception exists, however, in the form of the collateral order doctrine. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949). Often, an order denying a motion to unseal will qualify as a collateral order subject to immediate appeal even though it is not a final judgment. *E.g.*, *HSBC*

14

*Bank USA*, 863 F.3d at 133-34; *Doe v. Lerner*, 688 Fed. Appx. 49, 50 (2d Cir. 2017); *Lugosch*, 435 F.3d at 117-19.

But just because a party may immediately appeal a collateral order does not mean she has to. *In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 179, 181 (2d Cir. 1987). Unlike a final judgment, an appellant does not lose the right to appeal a collateral order by failing to file a notice of appeal within the time limits of Federal Rule of Appellate Procedure 4, so long as the party timely appeals after entry of a final judgment. *Id.*

Here, however, the district court's January 13, 2020 order—which categorically removed the undecided motions and related from the unsealing process—was itself a final judgment and not a collateral order. Giuffre and the Herald should have appealed it before February 13, 2020. *See* Fed. R. App. P. 4(a)(1)(A) (notice of appeal deadline is thirty days from entry of a final judgment). Because they didn't, this Court lacks jurisdiction to review that order. *Franklin*, 804 F.3d at 632.

Courts often say that a "final judgment" is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *In re Roman Catholic Diocese of Albany*, 745 F.3d 30, 35 (2d Cir. 2014). That general statement cannot apply here, of course, because the litigation between Giuffre and

Maxwell ended "on the merits" when Judge Sweet dismissed the case with prejudice on May 24, 2017.

The Supreme "Court often has pointed out, a decision 'final' within the meaning of [section] 1291 does not necessarily mean the last order possible to be made in a case." *Gillespie v. U.S. Steel Corp.*, 379 U.S. 148, 152 (1964). But what does that mean for this case? Were certain orders entered before December 18, 2023, appealable as final judgments rather than collateral orders even though they weren't the "last order possible to be made in [the] case?" *See id.*

Clearly the answer is yes. After all, this Court already considered several appeals from final judgments directing the unsealing of certain material. *E.g.*, *Doe 171*, 2023 WL 4926196, at *1; *Doe 107*, 2023 WL 4926195, at *1; *Giuffre v. Maxwell*, 827 Fed. Appx. 144, 145 (2d Cir. 2020).

The district court's January 13, 2020 order also was a final judgment rather than a collateral order. The Supreme Court's decision in *Radio Station WOW v. Johnson*, 326 U.S. 120 (1945), shows why.

There, "[t]he Supreme Court of Nebraska had disposed of the case by directing a remand to the trial court, which was ordered immediately to set aside the lease of a radio station and deliver physical possession, and then to continue proceedings for an accounting." Wright & Miller, 15A Fed. Prac. & Proc. Juris.,

16

§ 3909, *Leading Finality Decisions*, (3d ed. June 2024 Update). Justice Frankfurter concluded that the Nebraska Supreme Court's decision was final even though the Court directed further proceedings.

Justice Frankfurter acknowledged this was superficially contrary to "[c]onsiderations of English usage as well as those of judicial policy" which "would readily justify an interpretation of 'final judgment' so as to preclude reviewability . . . where anything further remains to be determined. . . ." *Radio Station WOW*, 326 U.S. at 125. Even so, he ruled that the judgment was final because "the order for immediate delivery of the property had the effect of separating the proceeding for an accounting into an effectively separate case, 'independent of, and unaffected by another litigation with which it happens to be entangled.'" Wright & Miller, § 3909 (quoting *Radio Station WOW*, 326 U.S. at 126).

Similar logic applies here. The district court's January 13, 2020 order — which categorically removed the undecided motions and related material from the unsealing process — "had the effect of separating the proceeding into an effectively separate case," *id.*, concerning only those motions Judge Sweet "actually decided." [SPA 3.] Under the logic of *Radio Station WOW*, the January 13, 2020 order was a final judgment when entered even though further proceedings

remained. *See Radio Station WOW*, 326 U.S. at 126. That is fully consistent with "the importance of administering the finality requirement with flexibility," Wright & Miller, § 3909, and the "pragmatic approach to the question of finality has been considered essential to the achievement of the 'just, speedy, and inexpensive determination of every action.'" *Brown Shoe Co. v. United States*, 370 U.S. 294, 306 (1962).

In turn, because neither Giuffre nor the Herald filed a notice of appeal within thirty days of the district court's January 13, 2020 order, this Court lacks jurisdiction to review the district court's determination that "only motions actually decided by Judge Sweet--along with documents relevant to Judge Sweet's decision on those motions--are properly considered judicial documents." *See* Fed. R. App. P. 4(a)(1)(A); *Franklin*, 804 F.3d at 632.

## II. Assuming this Court has jurisdiction to review the January 13, 2020 order, the district court properly limited the unsealing review to "only motions actually decided by Judge Sweet--along with documents relevant to Judge Sweet's decision on those motions."

### A. The district court correctly ruled that the undecided motions were not judicial documents.

Assuming this Court has jurisdiction to review the district court's January 13, 2020 order, the district court did not err in ruling that "only motions actually

18

decided by Judge Sweet--along with documents relevant to Judge Sweet's decision on those motions--are properly considered judicial documents." [SPA 3.]

A document qualifies as a judicial document only if it is "relevant to the performance of the judicial function and useful in the judicial process." *Amodeo I*, 44 F.3d at 145. Under Article III, a court "performs the judicial function . . . when it rules on motions currently before it" and "when properly exercising its inherent supervisory powers." *Brown*, 929 F.3d at 49 (cleaned up).

By contrast, "[d]ocuments that play no role in the performance of Article III functions . . . lie entirely beyond the [reach of the presumption of public access]." *Amodeo II*, 71 F.3d at 1050. Thus, as the district court correctly recognized, a document "may only be judicial in nature—and thus subject to the presumption of public access—if it is somehow relevant to the exercise of the judicial power vested in the federal courts by Article III of the Constitution of the United States." [SPA 6 (citing U.S. Const. art. III, § 1).] *See also Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 621 F. Supp.2d 55, 63 (S.D.N.Y. 2007) ("Because the [] documents did not in any way figure into the Court's performance of its *Article III functions*, the documents do not qualify as judicial." (emphasis added)).

The core Article III power "to determine actual controversies arising between adverse litigants, duly instituted in courts of proper jurisdiction." *Muskrat*

*v. United States*, 219 U.S. 346, 361 (1911). "Without a suit, without parties, . . . the judicial power is absent." [SPA 7 (quoting Craig A. Stern, *What's a Constitution Among Friends? Unbalancing Article III*, 146 U. Pa. L. Rev. 1043, 1055 (1998)).]

The underlying action between Giuffre and Ms. Maxwell settled seven years ago. As the district court correctly recognized, this meant that "[a]ll disputes regarding the underlying merits of the action have been rendered moot by the settlement." [SPA 7 (quoting *LaForest v. Honeywell Intern. Inc.*, 569 F.3d 69, 74 (2d Cir. 2009)).]

"With respect to motions left undecided by Judge Sweet, there was never, and now never can be, a judicial decision-making process that would trigger the public's right to access the undecided motions and the documents relevant to them." [SPA 7-8.] "[M]otions not ruled on before settlement are not just unadjudicated—they are unadjudicable." [SPA 8 n.1 (quotation omitted).]

Considering these principles, the district court held that the undecided motions were not "relevant to the performance of the judicial function [or] useful in the judicial process." *See Lugosch*, 435 F.3d at 119. Given the unique circumstances of this case, "there is simply no decision to be made, no exercise of the judicial power that can take place, and no court action for the public to monitor." [SPA 10.] The district court was exactly right.

20

## B. The Herald's and Giuffre's contrary arguments lack merit.

None of the Herald's or Giuffre's contrary arguments is persuasive.

***First***, the Herald suggests that this Court already ruled in *Brown* that everything filed in the district court is a judicial document. [Herald Br., p 12 n.3] Not so. If that's what this Court had ruled, it would have contravened this longstanding rule "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *Amodeo I*, 44 F.3d at 145. Indeed, this Court in *Brown* expressly acknowledged that filing material with a court is necessary but not sufficient to render it a judicial document. *Brown*, 929 F.3d at 49 & n.24 (citing *Amodeo I*).

Contrary to the Herald's suggestion, the "key question" is whether the document (once filed) is "relevant to the performance of the judicial function and useful in the judicial process." *HSBC*, 863 F.3d at 134 (quoting *Amodeo I*, 44 F.3d at 145). For the reasons given above, the district court here did not abuse its discretion in concluding the undecided motions were irrelevant to the performance of the judicial function and were therefore not judicial documents.

***Second***, Giuffre spends pages arguing that the district court erred in concluding that "undecided motions" could not be judicial documents. [Giuffre Br., pp 11-14.] The Herald characterizes the alleged error slightly differently,

21

claiming that the district court ruled that papers qualify as judicial documents "only if the court relied on them." [Herald Br., p 19.] Neither characterization fairly describes what the district court held.

Rather, as the district court patiently explained, "[t]here is a stark difference between a motion that is not *yet* decided and one that can never be decided." [SPA 8 n.1.] A "lapsed motion"—a motion left undecided when a case is mooted, which therefore can never be decided consistent with Article III—"functionally is no different from one never filed. Neither involves a situation in which a court is 'rul[ing] on motions currently before it' and neither 'would reasonably have the *tendency* to influence' a district court's decisions." [DE 1005, p 5 (quoting *Brown*, 929 F.3d at 49).]

**Third**, the Herald's and Giuffre's reliance on *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132 (2d Cir. 2016) is misplaced. In that case, a party filed a complaint under seal, with the seal to be lifted fourteen days later. *Id.* at 136. On day thirteen, the parties settled the case. *Id.* The parties then sought an order closing the case and keeping the complaint permanently under seal. *Id.* The district court refused to issue that order, and this Court affirmed, holding that complaint was a judicial document even though the case settled. *Id.*

22

That is nothing like this case. The operative complaint in a settled case is nothing like an undecided discovery motion or a motion in limine in a settled case. A complaint is operative merely from the fact of its filing without any judicial action. The complaint initiates and dictates the entire case. The complaint in fact *triggers* the district court's Article III powers. *See In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993) ("[T]he plaintiff's complaint must allege a substantive claim that triggers the court's adjudicative function.").

A motion, by contrast, means nothing without judicial action. And here, because the case was mooted by settlement, there is no Article III judicial action any court could take with respect to the undecided motions.[4] *See LaForest*, 569 F.3d at 74.

*Fourth*, Giuffre argues that "judicial inaction is subject to public accountability." [Giuffre Br., p 17.] In the abstract, Ms. Maxwell agrees. But there's no accountability to be found here, when a district court is powerless to rule on a motion under Article III. This is not a case of a judge defiantly refusing to rule on pending motions. *Cf. Lugosch*, 435 F.3d at 113-16 (magistrate judge waited nearly

---

[4] This Court need not decide whether an undecided motion to dismiss or an undecided motion for summary judgment qualifies as a judicial document even after a case is settled. Those dispositive motions affect and determine legal rights and liabilities. The documents at issue here are not of the same ilk.

a year to rule on intervention motion, despite repeated requests from parties for a ruling, only to refuse to rule on the merits and to hold the motion in abeyance).

*Finally*, the Herald chides the district court for its use of the phrase "judicial decision-making," insisting that the proper inquiry focuses on the "judicial function" and the "judicial process." [Herald Br., p 17-18.] But the district court agreed with the Herald that a judicial document as one that is "relevant to the performance of the *judicial function* and useful in the *judicial process*." [SPA 5 (quoting *Amodeo I*, 44 F.3d at 145) (emphases added).] In any event, the distinction the Herald attempts to draw is nebulous at best.

## C. If the district court erred, a remand is the appropriate remedy.

Because the district court held that no presumption of access attached in the first instance, the court did not make findings about whether the weak presumption of access was outweighed by countervailing interests. Likewise, because the district court categorically removed the undecided motions and related material from the unsealing process, neither Ms. Maxwell nor the hundreds of relevant third parties had a meaningful opportunity to identify their interests in keeping the material sealed. The issue simply wasn't before the court. Thus, unlike the summary judgment material at issue in *Brown*, this Court cannot conduct that balancing inquiry in the first instance. *Cf. Brown*, 929 F.3d at 48.

24

Accordingly, if this Court declines to affirm the January 13, 2020 order, it should remand the case for the district court to balance the competing interests on a document-by-document basis in light of this Court's legal conclusions. *See, e.g., Doe 107*, 2023 WL 4926195, at *1; *Brown*, 929 F.3d at 51.

### III. The district court did not abuse its discretion in maintaining under seal the unredacted version of Ms. Maxwell's July 2016 deposition transcript.

Ms. Maxwell's July 2016 deposition transcript has largely been unsealed and released to the public.

This Court released excerpts from the transcript in *Brown*, with minimal redactions "concerning intimate matters where the questions were likely only permitted—and the responses only compelled—because of a strong expectation of continued confidentiality." *Brown*, 929 F.3d at 48 n.22. For its part, the district court then released most of the rest of the transcript. Like this Court in *Brown*, though, the district court redacted material concerning intimate matters. [DE 1257-10.][5]

Despite the district court's meticulous work, Giuffre argues that the district court erred in declining to release the transcript in its entirety. Her argument fails.

---

[5] District court DE 1257-10 is the redacted version of the transcript released to the public. The unredacted version of the transcript is located at CA.465–537.

25

### A. This Court's mandate in *Brown* compelled the district court's decision.

#### 1. Background.

In *Brown*, this Court unsealed most of the summary judgment material. *Brown*, 929 F.3d 48. That material included excerpts of Ms. Maxwell's July 2016 deposition transcript. As this Court knows, Judge Sweet compelled Ms. Maxwell to sit for the July 2016 deposition on eight topics all "relating to [her] own sexual activity" and "her knowledge of sexual activities of others." [DE 1327-9, p 11.] Judge Sweet overruled Ms. Maxwell's privacy objections after finding her "privacy concerns are alleviated by the protective order in this case." [*Id.*] Indeed, Giuffre urged the Protective Order as a reason for Judge Sweet to compel these answers from Ms. Maxwell. [*See* DE 1320-6, p 1 ("Such questions are entirely appropriate in the discovery phase of this case, particularly where any answers will be maintained as confidential under the Protective Order entered in this case.").]

This Court's release of the summary judgment material was not cavalier. To the contrary, it redacted deposition responses from Ms. Maxwell "concerning intimate matters where the questions were likely only permitted—and the responses only compelled—because of a strong expectation of continued confidentiality." *Brown*, 929 F.3d at 48 n.22 (citing Fed. R. Civ. P. 5.2).

## 2. Analysis.

The mandate rule "requires a trial court to follow an appellate court's previous ruling on an issue in the same case." *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002). Here, this Court's decision to redact "intimate matters" from the deposition excerpts compelled the district court's decision to redact the same type of material from the balance of the deposition transcript. [DE 1149, pp 3-5.]

Recall that "documents submitted to a court for its consideration in a summary judgment motion are—as a matter of law—judicial documents to which a strong presumption of access attaches." *Brown*, 929 F.3d at 47. If Ms. Maxwell's privacy interest was sufficient to demand redactions despite this "strong presumption of access," *see id.* at 47-48 & n.22, then the same must be true when considering an exhibit to a response to a motion to compel, a document with an "appreciably weaker" presumption of access, *see Graham*, 257 F.3d at 151. Under the mandate in *Brown*, therefore, the district court had to redact Ms. Maxwell's testimony "concerning intimate matters where the questions were likely only permitted—and the responses only compelled—because of a strong expectation of continued confidentiality." 929 F.3d at 48 n.22 (citing Fed. R. Civ. P. 5.2). That is precisely what the district court did.

27

**B.  The presumption of access to the deposition transcript is little more than a prediction of access.**

Even if this Court's mandate in *Brown* did not dictate the redactions, the district court did not abuse its discretion in releasing the transcript in redacted form.

The presumption of access to the deposition transcript is weak at best—little more than "a prediction of public access absent a countervailing reason." *Lugosch*, 435 F.3d at 121. That's because, as Giuffre admits, the deposition transcript wasn't attached to a dispositive motion or even a motion in limine. It was, instead, attached as "an exhibit to her brief opposing a request to reopen that deposition." [Giuffre Br., p 16.]

Ms. Maxwell submitted the transcript of her deposition to persuade the court that two depositions were enough (she was previously deposed in April 2016). [SPA 21.] In this sense, the deposition transcript is like a document that "come[s] within a court's purview solely to insure [its] irrelevance." *Amodeo II*, 71 F.3d at 1049. The deposition transcript was not offered to prove any ultimate facts, establish or disclaim liability, or affect any party's legal rights. It "came within the court's purview" solely to insure that Ms. Maxwell would not be subjected to another intrusive and compelled interrogation by Giuffre's attorneys.

28

Unlike "the strong weight to be accorded the public right of access to judicial documents" that play a meaningful role in "determining litigants' substantive rights," which is "conduct at the heart of Article III," *Amodeo II*, 71 F.3d at 1049, the presumption of access to an exhibit attached to a response to a motion to compel is "appreciably weaker," *Graham*, 257 F.3d at 151. The district court, therefore, was right to conclude that although "the presumption of public access does attach to this transcript," that presumption was less strong than "if it were submitted in connection with a dispositive motion." [SPA 21.]

### C. The district court did not clearly err in concluding that Ms. Maxwell's privacy interests outweighed any minimal presumption of access.

Because the presumption of access to Ms. Maxwell's July 2016 deposition transcript is "little more than a prediction of public access," that prediction of access can be overcome merely through the identification of a "countervailing reason." *See Lugosch*, 435 F.3d at 121. The district court identified Ms. Maxwell's right to privacy as a substantial countervailing interest. [SPA 21-22.] As Giuffre admits, this Court's review of that decision is limited to clear error. [Giuffre Br, p 25.]

"Clear error review permits only limited reexamination of factual findings where 'the district court's account of the evidence is plausible in light of the record

29

viewed in its entirety.'" *Doe*, 391 F.3d at 163–64 (quoting *Anderson*, 470 U.S. at 573-74). Here, the district court's assessment of Ms. Maxwell's privacy rights is more than "plausible in light of the record." *See id.* at 164.

The district court found that "[d]uring [the July 2016] deposition, Ms. Maxwell was asked repeatedly about her own sexual activity with consenting adults." [SPA 21.] "Ms. Maxwell's countervailing interests in resisting disclosure of the details of her private, intimate relationships with consenting adults" outweighed the presumption of public access. [*Id.* at 21-22.] After all, explained the court, Ms. Maxwell's testimony was "far afield from the sex trafficking and sexual abuse allegations that were central to the dispute in *Giuffre v. Maxwell*." [*Id.* at 22.] Concluded the court: "Ms. Maxwell's interest in keeping private the details of her sexual relationships with consenting adults warrants the sealing of those portions of her testimony (and any materials that reference them)," notwithstanding the "prurient interest of some." [*Id.*]

These findings are not clearly erroneous. Discovery, after all, "involves the use of compulsory process to facilitate orderly preparation for trial, *not to educate or titillate the public*." *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982) (emphasis added).

In trying to argue otherwise, Giuffre claims that the district court redacted questions and answers that were "directly related" to the defamation action and the ensuing criminal prosecution. [Giuffre Br., p 23-24.] In support, Giuffre cites an order issued by Judge Nathan in the criminal case, *United States v. Maxwell*, 545 F. Supp. 3d 72, 80 (S.D.N.Y. 2021), and a press release from the United States Attorney's Office, [Giuffre Br., p 24 n.5.] She does not explain how those authorities (if a press release counts as an "authority") show that the district court erred in keeping sealed Ms. Maxwell's private, personal, and consensual activity with consenting adults.

Giuffre appears to argue that the district court clearly erred in keeping sealed the details of Ms. Maxwell's consensual sexual conduct (or lack thereof) with Jeffrey Epstein. [Giuffre Br., p 25.] But as her immediately preceding argument and citation to Judge Nathan's opinion makes clear, many details of that conduct were publicly revealed in the criminal trial. And as this Court has recognized, "limited redaction . . . may still be appropriate" when "much of the [information] contained in the papers has already been publicized." *Matter of N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987).

Finally, Giuffre criticizes the district court for purportedly "over[] redact[ing]" the deposition transcript. [Giuffre Br., p 26.] But when the

presumption of access is as weak as it is here, alleged "over redaction" is hardly the stuff of clear error.

Where precisely to draw the line is a decision committed to the district court's sound discretion. *Nixon*, 435 U.S. at 599. Unlike Judge Sweet, Judge Preska carefully reviewed every page of the deposition transcript and endeavored to narrowly tailor her redactions to protect against the release of irrelevant and private information. [SPA 22 ("For the sake of efficiency, my chambers will share with the parties a copy of the transcript that highlights the portions of Ms. Maxwell's deposition that should remain redacted. This will avoid, I know you're happy to hear, my reading into the record my line-by-line determinations regarding the full 193-page transcript.")]. Because "[t]he District Court's order articulated and applied the correct legal framework in its individualized review of the materials to be unsealed," *Giuffre*, 827 Fed. Appx. at 145, there was no abuse of discretion.

### D. The district court's rejection of Ms. Maxwell's other arguments proves its decision was carefully calibrated.

One could be forgiven for reading Giuffre's brief and believing that the district court rubber stamped Ms. Maxwell's arguments. But that's not what happened.

*First*, Ms. Maxwell asked the district court to keep the entire deposition transcript sealed. [DE 1149, p 1.] The district court firmly rejected that argument. [SPA 22.]

*Second*, Ms. Maxwell argued that releasing any portion of the transcript would violate her right to due process in the then-pending criminal case. [DE 1149, p 6.] The district court disagreed on that point as well. [SPA 20.]

*Third*, the district court even rebuffed Ms. Maxwell's request to put the unsealing process on hold while the criminal case progressed. [SPA 20.]

In the end, all the district court did was redact from the transcript the "details of [Ms. Maxwell's] private, intimate relationships with consenting adults." [SPA 22.] That is *exactly* what this Court did when it released redacted excerpts from the transcript in *Brown*, 929 F.3d at 48 n.22. The district court can hardly be faulted for following this Court's lead.

## IV. The district court did not abuse its discretion in declining to unseal Giuffre's state-court deposition transcript.

Giuffre's state-court deposition transcript was attached as an exhibit to Alan Dershowitz's motion to intervene. [*See* DE 363-7.] Giuffre advances two arguments in support of her contention that the district court erred in keeping the transcript sealed. [Giuffre Br., pp 20-22.] Relying on *Lugosch*, Giuffre first contends that the district court applied an improperly low presumption of access to the document.

33

[*Id.* at 20-21.] She next contends that even assuming that presumption of access was correct, the district court should have unsealed the entire transcript. [*Id.* at 21-22.] Neither argument succeeds.

***First***, Giuffre's reliance on *Lugosch* is misplaced. To be sure, this Court said that "[i]f the rationale behind access is to allow the public an opportunity to assess the correctness of the judge's decision . . . documents that the judge should have considered or relied upon, but did not, are just as deserving of disclosure as those that actually entered into the judge's decision." *Lugosch*, 435 F.3d at 123 (cleaned up). But the documents at issue there were *summary judgment* documents, which enjoy the strongest presumption of access. *Brown*, 929 F.3d at 48.

The document here was an exhibit to a motion to intervene. As the district court recognized, [SPA 77], Mr. Dershowitz's intervention motion had nothing to do with the merits of Giuffre's defamation claim against Ms. Maxwell, and it wasn't "introduced at trial, or in connection with dispositive motions." *See Giuffre*, 827 Fed. Appx. at 145. The district court was thus correct to conclude that the presumption of access to the transcript was "barely cognizable." [SPA 77.]

Giuffre's second argument fares similarly. Giuffre says that once the deposition transcript was submitted to the court, "it should have been assumed to play a role in the court's deliberation." [Giuffre Br., p 21.] But that's just another

34

way of arguing that the public has a right to access *every* document filed with the court. Contrary to implication of Giuffre's implication, that is not the law. *Brown*, 929 F.3d at 49 & n.24.[6]

Assuming, however, that the district court erred, the proper remedy is to remand. Because the district court concluded the "barely cognizable" presumption of access had not been overcome, it did not have to decide whether any of the objecting Does' countervailing interests should be protected by targeted redactions. The wholesale release of the transcript is not the appropriate remedy if the district court misapprehended the strength of the presumption of access. *See Doe 107*, 2023 WL 4926195, at *1.

## V. The district court did not abuse its discretion in declining to unseal the material involving Does 17, 93, 97, and 133.

The district court did not abuse its discretion in declining to unseal the material involving Does 17, 93, 97, and 133.

---

[6] That's not to say the deposition transcript is not a "judicial document." The district court found that it was, and Ms. Maxwell agrees. But the presumption of access to the document is "appreciably weaker" than the presumption of access to a dispositive motion, just as the district court found. *See Graham*, 257 F.3d at 151.

## A. Doe 133.

Guiffre and the Herald object to the district court's decision not to unseal the material involving Doe 133. [Giuffre Br., pp 27-31; Herald Br., pp 25-27.] Their arguments lack merit.

*First*, following this Court's guidance from *Brown*, the district court held that the documents involving Doe 133 are judicial documents to which the presumption of public access attaches. [*See, e.g.,* SPA 142 ("The documents at issue here were submitted in connection with discovery motions decided by Judge Sweet. The Court concludes that they are judicial documents to which the presumption of public access attaches.").]

*Second*, this Court held that the documents referencing Doe 133 are "somewhat less weighty than for a dispositive motion [but] nevertheless important to the public interest in monitoring federal courts' exercise of their Article III powers." [SPA 142-43.]

*Third*, the district court conducted its review as directed by this Court. Specifically, the district court conducted a "particularized review of each document" and "[w]ith [the] presumption of public access in mind, . . . considered the arguments advanced by Ms. Giuffre in her briefing and the submissions from the intervenors" in addition to the "various privacy interests" of Doe 133 and

others similarly situated. [*See, e.g.*, SPA 70-72; SPA 86 ("The Court reiterates here its previous recitation of the applicable law and descriptions of the unsealing process set out in the transcripts dated . . . November 18, 2022 (dkt. no. 1283).").] And in line with this Court's holding that "a court must still articulate specific and substantial reasons for sealing such material," *Brown*, 929 F.3d at 50, the district court articulated that

> Plaintiff does not dispute that this Doe was mistakenly identified in a photograph and that this Doe's characterization as an alleged perpetrator was first introduced by a reporter, not by Plaintiff. In addition, this Doe has sought to avoid public attention to the allegations. As such, the public interest does not outweigh the privacy interests of this Doe.

[SPA 121.]

 None of this was an abuse of discretion.

### 1. Giuffre and the Herald misconstrue the district court's holding and ignore the specific and substantial reasons supporting Doe 133's privacy interests.

As to Doe 133, the district court held that "the public interest does not outweigh the *privacy interests* of this Doe." [SPA 121 (emphasis added).] But both Giuffre and the Herald misstate the district court's holding to advance their legal hypothesis—unsupported by any case law—that a factual finding of mistaken identity cannot play any role in a district court's balancing of the presumption of public access against the countervailing privacy interests of non-parties. [*See*

37

Giuffre Br., p 27 ("The District Court erred in finding that the public's

presumption of access was outweighed because of 'mistaken' identities."); *see also*

Herald Br., p 25 ("'A Case of Mistaken Identity' Is Not Sufficient Grounds for

Sealing Information").] While mistaken identity may have been one factor that the

district court considered in determining the weight to accord the privacy interests

of Doe 133, it was not the sole reason for the continued sealing of references to Doe

133. And, in any case, mistaken identity is an important consideration in weighing

the mistakenly identified non-party's privacy interests.

"In determining the weight to be accorded an assertion of a right of privacy,

courts should first consider the degree to which the subject matter is traditionally

considered private rather than public." *Amodeo II*, 71 F.3d at 1051. In particular,

"family affairs . . . [and] embarrassing conduct with no public ramifications, and

similar matters will weigh more heavily against access than conduct affecting a

substantial portion of the public." *Id.*; *see also Application of Newsday, Inc.*, 895 F.2d

74, 79 (2d Cir. 1990) (holding that disclosure of "intimate relations" qualifies the

common law right of access); *United States v. Silver*, No. 15-CR-93 (VEC), 2016

WL 1572993, at *6 (S.D.N.Y. Feb. 23, 2016) ("[individuals] have an interest in

maintaining the privacy of their alleged sexual relationships, which can constitute

'embarrassing conduct' and 'family affairs' and which are undoubtedly a sensitive

subject"). The district court's factual finding that Doe 133 was characterized "as an alleged perpetrator" [SPA 121], makes clear that the underlying subject matter is "traditionally considered private rather than public."

Contrary to the appellants' conclusory assertion that "mistaken identity is not a valid ground for continued sealing," [*see, e.g.,* Giuffre Br., p 28], a factual finding of mistaken identity directly impacts the weight that a district court can place on the "nature and degree of injury" for any mistakenly identified Doe. When specific and substantial evidence of mistaken identity is presented to the district court, that evidence of "mistaken identity" must necessarily be a critical component in weighing the "nature and degree of injury" for the mistakenly identified non-party.

Moreover, the Miami Herald's arguments in its opening brief make clear that the "person seeking access intends to use the information" in a way that this Court has expressly admonished against in *Brown*: "the media does the public a profound disservice when it reports on parties' allegations uncritically." 929 F.3d at 53. In Section III of its brief, the Miami Herald asserts in conclusory fashion that "[t]here can be no countervailing interest . . . that could shield [a] particular Doe's identity against the strong presumption of public access in identifying a 'prominent American politician' who is accused of engaging in sexual trafficking of a minor."

39

Leaving aside that the presumption of public access exists so that the public may "monitor[] the federal courts" and is not at all tied to identifying politicians who are mistakenly accused of wrongdoing in unverified court documents, the Miami Herald's arguments exemplify its intent to engage in the unscrupulous reporting of erroneous allegations as fact by virtue of being mentioned in "court papers."

Contrary to Giuffre's conclusory assertion, "reliability of the information" is also an important factor that district courts may consider in their balancing assessment. *United States v. Cohen*, 366 F. Supp. 3d 612, 624 (S.D.N.Y. 2019). *Brown* itself recognizes this. *See* 929 F.3d at 52 ("[C]ourt filings are, in some respects, particularly susceptible to fraud.").

While Giuffre argues on appeal that she "never agreed that Doe 133 was mistakenly identified," [Giuffre Br., p 28], the district court found that Giuffre did not deny or dispute specific and substantial evidence of Doe 133's mistaken identity in the record despite having an opportunity to respond to the evidence presented. [SPA 121 ("Plaintiff does not dispute that this Doe was mistakenly identified in a photograph and that this Doe's characterization as an alleged perpetrator was first introduced by a reporter, not by Plaintiff.").] These uncontested factual findings undermine the reliability of the information relating to Doe 133, and the district

40

court was well within its discretion to consider such evidence in weighing Doe 133's privacy interests.

District courts may consider privacy interests of non-parties in determining "whether the nature of the materials is such that there is a fair opportunity for the subject to respond to any accusations contained therein." *Cohen*, 366 F. Supp. 3d at 624. While Giuffre argues that Doe 133 should defend *privacy* interests "in *public* opposition briefs," that paradoxical suggestion is logically incoherent; engaging in public discourse would necessarily negate any privacy interest. The district court's factual finding that Doe 133 "has sought to avoid public attention to the allegations" is a "specific and substantial reason" that helps explain why, for Doe 133, public forums cannot be considered appropriate for responding to any accusations made in the underlying materials. As above, the district court was well within its discretion to consider that uncontested evidence in weighing Doe 133's privacy interests.

### 2. Giuffre and the Herald point to no clear error.

This Court reviews a district court's "factual findings for clear error." *Brown*, 929 F.3d at 47; Fed. R. Civ. P. 52(a)(6) ("Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the

41

witnesses' credibility."). Under the legal standard, there was no clear error in the district court's uncontested factual findings that Doe 133 was mistakenly identified and that Doe 133 has sought to avoid public attention to the allegations.

Doe 133 pointed to several facts in the record that illustrate how Doe 133 was mistakenly identified, including, among several other facts, that Doe 133 was "mistakenly identified in a photograph" and that Doe 133's "characterization as an alleged perpetrator was first introduced by a reporter, not by Plaintiff." [SPA 121.] Notwithstanding her first-hand knowledge of the facts and her ample opportunity to respond, Giuffre failed to rebut any of the specific and substantial evidence presented by Doe 133 in Giuffre's briefing before the district court and cannot now rewrite the record on appeal. That is all this Court needs to know to affirm. *See DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 827-28 (2d Cir. 1987) ("[W]e do not see how the district court could have independently determined [that the proof offered by the defendants was insufficient] without [the plaintiff's] assistance.").

Similarly, Giuffre and the Herald failed to dispute that Doe 133 has made a concerted effort to stay out of the public eye. Moreover, none of the references to Doe 133 at issue in this appeal have been unsealed, and whether Doe 133's identity was revealed in some documents does not bear on whether *different* documents

42

providing other information should remain sealed. *See Matter of N.Y. Times*, 828 F.2d at 116 (while "much of the [information] contained in the papers has already been publicized, . . . limited redaction . . . may still be appropriate."). This is especially so given that the wholesale unsealing of the documents that mention Doe 133's name might easily be sensationalized by the media in a way that wrongly suggests Giuffre's allegations are true, when all of the available evidence proves, at best, a case of mistaken identity.

### 3. The district court's narrow ruling to redact only Doe 133's name is squarely within the range of permissible decisions.

The district court made specific, on the record factual findings (that were undisputed) supporting its holding that the privacy interests of Doe 133 outweigh any public interest in the materials referencing Doe 133's name. The district court then required the narrow sealing of only Doe 133's "name and identifying information," unsealing the entirety of the remaining text in those materials. [SPA 121.] These narrow redactions required by the district court struck the appropriate balance between the two competing interests of public access versus Doe 133's countervailing privacy interests.

Doe 133 is truly a peripheral character. Courts in the Second Circuit have regularly allowed the narrow sealing of the identity of peripheral characters as such redactions preserve the Does' privacy interests without, in any way, impairing the

43

public's ability to monitor the decision-making processes of the courts. *See United States v. Donato*, 714 Fed. Appx. 75, 76-77 (2d Cir. 2018) ("In making more tailored findings regarding which information should remain sealed, the identities of witnesses in the witness protection program that were subject to the existing protective order should not be disclosed."); *Greer*, 952 F.3d at 61-67 (privacy interests of a non-party witness were sufficient to overcome even a strong presumption of public access); *see also Cohen*, 366 F. Supp. 3d at 625 (names of certain third parties considered to be "peripheral characters" were redacted as they could "nonetheless be 'stigmatized from sensationalized and potentially out-of-context insinuations of wrongdoing, combined with the inability of these third parties to clear their names at trial'"). Similarly, the district court's decision to seal only Doe 133's "name and identifying information" in this case was well within the range of permissible decisions, and this Court should uphold that narrowly tailored remedy.

### B.  Doe 17 and Doe 97.

The Herald and Giuffre also object to the district court's decision not to unseal the material involving Doe 97. [Herald Br., pp 25-27; Giuffre Br., pp 27-31.] Both argue that a case of mistaken identity "is not sufficient grounds" to overcome

a presumption of access. [Herald Br., p 25; *see* Giuffre Br., p 27.] The Herald (but not Giuffre) makes the same argument as to Doe 17. [Herald Br., pp 25-26.]

For the reasons given above regarding Doe 133, the Herald's and Giuffre's arguments about Does 17 and 97 are meritless. ***First***, neither the Herald nor Giuffre argue, let alone prove, that the district court clearly erred in finding that Doe 17's or Doe 97's inclusion was a case of mistaken identity.[7]

***Second***, absent from either brief is a single case holding that a district court is legally prohibited from considering mistaken identity as a countervailing interest. [Herald Br., pp 25-27; Giuffre Br., pp 27-31.] The Herald and Giuffre, therefore, cannot prove the district court committed a legal error.

***Finally***, because the district court committed neither a factual nor legal error, the Herald and Giuffre can prevail only if they prove that the district court's choice was outside the range of "permissible decisions" because it was "manifestly erroneous." *See Zervos*, 252 F.3d at 169 (permissible decisions); *Wills*, 379 F.3d at 41 (manifestly erroneous). Neither the Herald nor Giuffre can establish that the district court acted outside the range of reasonableness.

---

[7] Giuffre says that she "never agreed that [Doe 97] was a case of mistaken identity." [Giuffre Br., p 27.] However, Giuffre does not actually argue that Doe 97 was *correctly* identified. Thus, Giuffre cannot prove clear error. *Supra* Part V.A.2.

Ultimately, the Herald and Giuffre both simply disagree with the balance the district court struck. As Giuffre puts it as to Doe 97, "the District Court erred in allowing Doe[] 97 . . . to remain redacted because their 'mistaken' identity *outweighed* the public presumption of access." [Giuffre, p 27 (emphasis added).] But whether one interest outweighs another is a quintessential act of balancing that Article III commits to the district court's sound discretion. *Nixon*, 435 U.S. at 599. And as a matter of law, "[m]ere disagreement with how the district court balanced the [relevant] factors is not a sufficient ground for finding an abuse of discretion." *United States v. Halvon*, 26 F.4th 566, 569 (2d Cir. 2022) (cleaned up).

**C. Doe 93.**

The Herald (but not Giuffre) challenges the district court's decision not to unseal the material involving Doe 93. [Herald Br., p 27-28.]

Doe 93 is mentioned a single time in the hundreds of thousands of pages of material filed in the district court. The district court kept that sole mention of Doe 93 sealed because he "has not been accused of any wrongdoing," and "Giuffre has testified that she does not remember a man with his name." [SPA 146.] Doe 93 was as peripheral as they come. [*Id.* ("[H]e has no relevance to the issues in dispute in this matter.").] *See Cohen*, 366 F. Supp. 3d at 624 (redacting names of peripheral

46

third parties). The Herald does not argue these factual findings were clearly erroneous. [Herald Br., p 28.]

Nor can the Herald prove that the district court "manifestly err[ed]" in concluding that keeping Doe 93's name sealed was, on balance, a reasonable thing to do. *See Wills*, 379 F.3d at 41. As the district court saw it, "there is no public value in harming Doe's good name by publishing unproven, potentially libelous statements about him." [SPA 146 (quotations omitted).] That choice was within the range of "permissible decisions." *See Zervos*, 252 F.3d at 169.

### D. Ms. Maxwell takes no position on the district court's decision not to unseal the material involving Does 12, 58, 73, or 124.

The Herald (but not Giuffre) appeals the denial of its motion for access to the material involving Does 12, 58, 73, and 124.

Without suggesting any view of the merits of the Herald's arguments, Ms. Maxwell takes no position on the district court's decision to maintain the sealing of the Doe 12, 58, 73, and 124 material.

### VI. The district court did not abuse its discretion in declining to unseal Docket Entry 1026-3, an inaccurate, incomplete, and outdated list of the identities of the Jane and John Does.

There is no merit to the Herald's complaint that the district court should have unsealed the "list of Does and their corresponding assigned numerical

47

identifiers that was prepared by the Plaintiff and Defendant at the start of the

unsealing process." [Herald Br., p 31.][8]

The Herald moved to unseal Docket Entry 1026-3. [DE 1321.] But as the

district court found (and which the Herald now concedes, [Herald Br., p 31 n.6]),

> docket entry 1026-3 is not an accurate list of non-party names. Since
> this filing, the parties have provided the Court with an updated list of
> non-party names ("Document"), and disclosure of docket entry 1026-
> 3, which is now outdated, would therefore compound, not avoid, the
> spread of incorrect information.

[SPA 137].

On appeal, the Herald has changed tacks, asking this Court to unseal Docket

Entry 1028. [Herald Br., p 31 n.6.] But the Herald did not present that request to

the district court, and because the Herald does not even attempt to apply the plain-

error standard, this Court can summarily affirm. *See Doe 171*, 2023 WL 4926196, at

*2 (refusing to consider argument Doe 171 forfeited in the district court); *see also*

*United States v. Mendonca*, 88 F.4th 144, 165 (2d Cir. 2023) ("It is a well-

established general rule that an appellate court will not consider an issue raised for

the first time on appeal." (citing *e.g.*, *Allianz Ins. v. Lerner*, 416 F.3d 109, 114 (2d

Cir. 2005) (declining to entertain new arguments raised on appeal where the party

had raised different arguments in support of the same general legal claim below))).

---

[8] Giuffre does not join in the Herald's argument on this point.

In any event, the district court did not abuse its discretion in finding that "the privacy interests at stake outweigh any presumption of public access to the Document." [SPA 137.] As it explained, "This Document is akin to a summary exhibit under Federal Rule of Evidence 1006 — a mere aid prepared by the parties to assist the Court in carrying out its work." [SPA 138.] Moreover,

> The [District] Court's December 18 Order set forth an anonymized list of Does, the documents in which each appears, and the Court's reasoning for granting or denying unsealing. Thus, disclosing the Document will contribute nothing to the public's information that is not already knowable from the underlying documents and the Court's December 18 Order.

[*Id.*] And perhaps most importantly, "the underlying documents, akin to the evidence, have already been ordered unsealed with respect to most of the Does." [*Id.*]

On the flip side, the district court correctly noted that "unsealing the Document poses a danger to the privacy interests of the parties whose identities the Court has declined to unseal," even if those Does' names were redacted:

> [T]he alphabetical order of the list could easily lead to speculation about the identities of the as-yet-unnamed Does. This outcome is particularly likely in the wake of the recent media frenzy about some supposed "Epstein List" and the mass speculation about the identities of those on it. The Document includes minor victims, health care providers, members of law enforcement, and mere bystanders who have not sought publicity on these matters, and the Court has already found that their privacy interests outweigh any presumption of public access.

Those same reasons for denying unsealing continue to apply and to outweigh the public's interest in this Document.

[SPA 138-39.]

The Herald has come nowhere close to showing that these conclusions were "manifestly erroneous." *See Wills*, 379 F.3d at 41.

## Conclusion

1.  This Court should dismiss Giuffre's and the Herald's appeal of the district court's January 13, 2020 order.

2.  Alternatively, this Court should remand for the district court to conduct a particularized review in the first instance of the motions Judge Sweet did not decide.

3.  This Court should affirm the district court's decision not to unseal Ms. Maxwell's unredacted July 2016 deposition transcript.

4.  The Court should affirm the district court's decision not to unseal Giuffre's state-court deposition transcript.

5.  This Court should affirm the district court's decision not to unseal the material involving Does 17, 93, 97, and 133.

6.  Finally, this Court should affirm the district court's decision not to unseal Docket Entry 1026-3, an inaccurate, incomplete, and outdated list of the identities of the Jane and John Does.

Dated: July 15, 2024.

Respectfully submitted,

*s/ Adam Mueller*

Adam Mueller
HADDON, MORGAN & FOREMAN, P.C.
950 17th Street, Suite 1000
Denver, CO 80202
Tel 303.831.7364
amueller@hmflaw.com

*Attorneys for Ghislaine Maxwell*

## Certificate of Compliance with Rule 32

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(b) and L.R. 32.1(a)(4). It contains 11,214 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6). It has been prepared in proportionally spaced typeface using Microsoft Word 365 in 14 pt. Equity Font.

*s/ Adam Mueller*
_____

## Certificate of Service

I certify that on July 15, 2023, a copy of *Brief for Defendant-Appellee Ghislaine Maxwell* was filed with the Court using ACMS, which will send notification of the filing to all parties of record.

*s/ Adam Mueller*
_____