# 24-0182-cv(L), 24-0203-cv(CON)

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT
_____

VIRGINIA L. GIUFFRE

Plaintiff-Appellant,

JULIE BROWN, MIAMI HERALD MEDIA COMPANY,

Intervenors-Appellants,

- v. -

GHISLAINE MAXWELL,

Defendant-Appellee
_____

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

AMICUS CURIAE BRIEF OF JOHN DOE 183
IN SUPPORT OF AFFIRMANCE
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

Marion H. Little, Jr. (Ohio Bar # 0042679)
Matthew S. Zeiger (Ohio Bar #0075117)
ZEIGER, TIGGES & LITTLE LLP
41 S. High St., Suite 3500
Columbus, OH 43215-6110
Phone: (614) 365-9900
Fax: (614) 365-7900
Attorneys For Amicus Curiae

JOHN DOE 17, JOHN DOE 73,

Appellees,

SHARON CHURCHER, JEFFREY EPSTEIN,

Respondents,

TGP COMMUNICATIONS, LLC, ALAN M. DERSHOWITZ, MICHAEL
CERNOVICH, DBA Cernovich Media, UNITED STATES VIRGIN ISLANDS,

Intervenors.

## **<u>TABLE OF CONTENTS</u>**

**<u>PAGE</u>**

TABLE OF AUTHORITIES ................................................................. iii

INTEREST OF AMICUS ......................................................................1

SUMMARY OF THE ARGUMENT ......................................................2

ARGUMENT .......................................................................................7

     A.    The District Court Did Not Abuse Its Discretion In Declining To Unseal Documents That Are Not Subject To Any Presumptive Right Of Access – The Non-Party Does' Submissions ................................................................7

          1.    The Public Has No Presumptive Right To Access Materials Submitted Solely So That The District Court May Decide Whether Sealed Materials Should Be Unsealed ...............................................................7

          2.    The District Court Did Not "Effectively Seal[] The Docket Sheet ...........................................................10

     B.    The District Court Did Not Abuse Its Discretion In Denying The Herald's Argument To Undo The Last Five Years' Worth Of Proceedings By Unsealing An Inaccurate List Identifying All Non-Party Does. ..........................................................14

     C.    The District Court Did Not Abuse Its Discretion In Redacting John Doe's Name From 363-7 ............................................19

          1.    The District Court's Decision .................................19

          2.    Plaintiff Misconstrues The District Court's Sealing Of Only A Narrow Portion Of 363-7, And The District Court's Reasons For Doing So ...............................20

i

**PAGE**

     3.     Even If The Limited Portions Of 363-7 Identifying John Doe 183 By Name Constitute "Judicial Documents," John Doe's Countervailing Privacy Interest Far Outweighs The Public's Interest In Accessing False, "Sensational" And "Impure" Information.......................................................................25

CONCLUSION ................................................................................28

CERTIFICATE OF COMPLIANCE .......................................................29

CERTIFICATE OF SERVICE .............................................................30

# TABLE OF AUTHORITIES

**Cases**                                                      **Page(s)**

*Application of Newsday, Inc.*, 895 F.2d 74 (2d Cir. 1990).......................18

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 2016 WL 1071107, (S.D.N.Y. Mar. 18, 2016) ........................................................13

*Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019) ..................................*passim*

*DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 2022 WL 2702378 (E.D.N.Y. Feb. 11, 2022) ...............................................................................25

*Doe v. Pub. Citizen*, 749 F.3d 246 (4th Cir. 2014) ..................................13

*Giuffre v. Maxwell*, 827 F. App'x 144 (2d Cir. 2020) ...............................2

*Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004) ..........13

*Healey v. Chelsea Res., Ltd.*, 947 F.2d 611 (2d Cir. 1991) .......................7

*In re IBM Arb. Agreement Litig.*, 2022 WL 30432203 (S.D.N.Y. Aug. 2, 2022) ...........................................................................26

*In re IBM Arb. Agreement Litig.*, 76 F.4th 74 (2d Cir. 2023) .................25

*In re New York City Policing During Summer 2020 Demonstrations*, 635 F. Supp. 3d 247 (S.D.N.Y. 2022) ......................................................8

*In re New York Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401 (2d Cir. 2009)........................................................................7

*Kewazinga Corp. v. Microsoft Corp.*, 2021 WL 1222122 (S.D.N.Y. Mar. 31, 2021) ...........................................................................26

*Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006) ........5, 8, 14, 21

*Millea v. Metro-N. R. Co.*, 658 F.3d 154 (2d Cir. 2011) .........................10

**Cases**                                                            **Page(s)**

*Mirlis v. Greer*, 952 F.3d 51 (2d Cir. 2020) ...................................................16, 17, 18

*Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156 (2d Cir. 2013)...............8, 10, 11, 15

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978)...............................16, 18, 27

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339 (2d Cir. 1994)...............................................................................................................7

*S.E.C. v. Telegram Grp. Inc.*, 2020 WL 3264264, n.3 (S.D.N.Y. June 17, 2020) .........................................................................................23

*S.E.C. v. TheStreet.Com*, 273 F.3d 222 (2d Cir. 2001)...............................................3

*Trump v. Deutsche Bank AG*, 940 F.3d 146 (2d Cir. 2019).......................5, 6, 22, 23

*United States v. Am. Univ. of Beirut*, 718 F. App'x 80 (2d Cir. 2018) ...................26

*United States v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995)....................................*passim*

*United States v. Aref*, 533 F.3d 72 (2d Cir. 2008) ....................................................21

*United States v. Gatto*, 2019 WL 4194569 (S.D.N.Y. Sept. 3, 2019)        24

*United States v. Gotti*, 322 F. Supp. 2d 230 (E.D.N.Y. 2004)................................24

*United States v. Sattar*, 471 F. Supp. 2d 380 (S.D.N.Y. 2006) ..............................11

*United States v. Smith*, 985 F. Supp. 2d 506 (S.D.N.Y. 2013) ...............................27

*United States v. Warburg Pincus LLC*, 2022 WL 2128669 (D. Vt. June 14, 2022).................................................................................................8

*United States v. Wolfson*, 55 F.3d 58 (2d Cir. 1995) ............................................3, 9

**Constitutional Provisions**                                       **Page(s)**

U.S. Constitution, Article III..............................................................................*passim*

## INTEREST OF AMICUS

John Doe 183 is among the Non-Party John and Jane Does (*i.e.*, persons "whose privacy, reputational, or other interests may be implicated by the unsealing") that the district court permitted to participate in the unsealing process anonymously under a pseudonym. [A-586.] Plaintiff and Intervenors Julie Brown and Miami Herald Media Company (collectively, the "Herald") have appealed district court rulings that, if reversed, will inevitably implicate and cause significant harm to those interests. As an innocent third party, John Doe's "privacy interests … weigh heavily in a court's balancing equation." *United States v. Amodeo*, 71 F.3d 1044, 1050–51 (2d Cir. 1995) ("*Amodeo II*"). He will have no "fair opportunity … to respond to any accusations contained" in the documents and excerpts subject to potential disclosure, even if they include "misleading or downright false information." *Id.* at 1048–49.

In its September 16, 2024 Order, this Court authorized John Doe to submit this brief consistent with Federal Rule of Appellate Procedure 29(a)(2).[1]

---

[1] No party or party's counsel authored this brief in whole or in part, or contributed money that was intended to fund preparing or submitting this brief. No person other than amicus curiae or its counsel contributed money that was intended to fund preparing or submitting this brief.

1

## SUMMARY OF THE ARGUMENT

This Court's decision in *Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019) has served as the guidepost for nearly-five-years of proceedings before the district court, including in the Unsealing Protocol that the district court jointly crafted with parties to resolve questions of public access to judicial documents.[2]   As this Court has previously observed, that Protocol is "the correct legal framework [for the] individualized review of the materials to be unsealed" as contemplated in *Brown*. *Giuffre*, 827 F. App'x at 145.  Appellants, however, remain unhappy with a years-long process that resulted in public disclosure of "thousands of pages" of previously sealed materials. *Brown*, 929 F.3d at 50–51.  Their challenges to the district court's decisions have no merit.

*First*, the Herald contends that the district court "erred" in failing to publicly docket the objections and filings that the Non-Party John Does submitted as part of the unsealing process, despite the court's indication that it would do so in the Unsealing Protocol.  [See A-589 (noting the court's staff would "make appropriate redactions" to objections and file them as redacted).]  In reality, no abuse of discretion occurred.  *Brown*, 929 F.3d at 47 (standard of review).

---

[2]     Because this Court has already considered multiple appeals from the underlying action, *see*, *e.g.*, *Brown*, 929 F.3d 41, *Giuffre v. Maxwell*, 827 F. App'x 144 (2d Cir. 2020), John Doe assumes its familiarity with the underlying facts.

In arguing that certain excerpts and documents should remain under seal, the Non-Party Does' submissions necessarily discussed the _content_ of those sealed excerpts and documents. As a result, these submissions fall squarely within the exception to the presumption of public access set forth in _Brown_: "the presumption of public access does _not_ apply to material that is submitted to the court solely so that the court may decide whether that same material must be disclosed" publicly. _Brown_, 929 F.3d at 50 n.33 (emphasis in original); _see also S.E.C. v. TheStreet.Com_, 273 F.3d 222, 233 (2d Cir. 2001) (rejecting the argument that confidential testimony became a "judicial document" because the district court considered it in deciding whether to enter a protective order). "[D]ocuments submitted to a court _in camera_ for the sole purpose of confirming that the refusal to disclose them … was proper" are not transformed into "judicial records open to the public" merely because the Herald disputes their non-disclosure. _United States v. Wolfson_, 55 F.3d 58, 61 (2d Cir. 1995).

_Second_, the district court properly rejected the Herald's demand that it upend the Unsealing Protocol entirely by publishing Doc#1026-3 – a detailed list of the Non-Party Does' "names, pseudonyms, home addresses and the document(s) in which each Doe appears." [SPA at 138.] As the district court correctly observed, the information in Doc#1026-3 is "not … accurate," since the court later received and relied upon a different, "updated list of non-party names." Granting the Herald's

3

request to release Doc#1026-3 thus would only have "compound[ed]," rather than prevented, the spread of misinformation.  [SPA-137.][3]

Even if the updated, correct list of identifying information were at issue on appeal, moreover, it is not a judicial document to which a presumption of access applies for the same reasons already noted – it was "submitted to the court solely so that the court may decide whether that same material [that it referred to] must be disclosed or maintained under seal." *Brown*, 929 F.3d at 50 n.33.  Additionally, to the extent that the list contained information concerning Non-Party Does that the district court's orders had already identified by name, those previous orders, including the district court's December 18, 2023 order, were more than sufficient to satisfy any purported presumption of access (even if one existed).[4]

Nor did the district court abuse its discretion in declining to unseal a list disclosing the identities of the Non-Party Does' whose substantial privacy interests outweighed any lesser presumption of public disclosure.  The district court had, after

---

[3]    The Herald admits that while it asked the district court to unseal Doc#1026-3, "the correct list that the court ultimately used in the unsealing process," and the one that the Herald actually meant to refer to, is Doc#1028.  [Intervenor Br. at 31 n.6.] It does not dispute the district court's finding that the Doc#1026-3 list is inaccurate.

[4]    The Herald argued that the list should be unsealed because it was "puzzling together the Court's [December 18, 2023] ruling" which summarized the court's orders with respect to the remaining Non-Party Does, "with each of the unsealed documents to match the identities of each of the third parties," and not having the list made the process "more challenging."  [A-618.]

4

all, spent the better part of five years painstakingly crafting and then applying a Protocol that necessitated a careful "individualized review" of a multitude of documents. *Brown*, 929 F.3d at 47. It reasonably refused to undo that judicial labor so that the Herald might more easily locate public information already at its finger tips.

<u>*Third*</u>, the district court did not abuse its discretion in maintaining under seal only those portions of Docket Entry No. 363-7 identifying John Doe 183 by name. Plaintiff argues that the district court improperly concluded that the deposition excerpt at 363-7 (that intervenor Alan Dershowitz attached as an exhibit to his motion to intervene) should remain sealed because it played no role in the district court's decision to grant Mr. Dershowitz's motion.

She forgets, however, that not every document filed with a court is a "judicial document." *See Brown*, 929 F.3d at 49 ("the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access"). "Before any such [right of public access] can attach" then, "a court must first conclude that the documents at issue are indeed 'judicial documents.'" *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006).

"In order to be designated a judicial document, the item filed must be relevant to the performance of the judicial function and useful in the judicial process." *Trump*

*v. Deutsche Bank AG*, 940 F.3d 146, 151 (2d Cir. 2019). Documents are "relevant to the performance of the judicial function" if they "reasonably have the tendency to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." *Brown*, 929 F.3d at 49. But the inverse of that rule is also true. So, "if … a court determines that documents filed by a party are *not* relevant to the performance of a judicial function, no presumption of public access attaches" because the documents are not judicial documents. *Id.* (emphasis in original); *see also Trump*, 940 F.3d at 152 ("Because the sealed letter (more precisely, the only portion of the letter that is sealed) is not relevant to any issue in the underlying appeal, it is not a 'judicial document' within the meaning of the decisions requiring unsealing of documents filed with a court.").

Here, the district court correctly concluded that references to John Doe 183's name in the deposition transcript had no relevance whatsoever to the district court's Article III function in resolving Dershowitz's motion and are therefore not "judicial documents." And even if they are, Plaintiff does not dispute that John Doe's countervailing privacy interests outweigh any insubstantial right of public access to documents accompanying non-dispositive motions. *See Brown*, 929 F.3d at 49–51, 53 ("documents that 'play only a negligible role in the performance of Article III duties' are accorded only a low presumption that 'amounts to little more than a

prediction of public access absent a countervailing reason.'" *Id.* at 49–50 (quoting *Amodeo II*, 71 F.3d at 1050); *see also id.* at 53 ("Materials submitted in connection with … discovery motions, motions in limine, and other non-dispositive motions" are subject to a "lesser" presumption.).

This Court should affirm.

## ARGUMENT

**A. The District Court Did Not Abuse Its Discretion In Declining To Unseal Documents That Are Not Subject To Any Presumptive Right Of Access – The Non-Party Does' Submissions.**

### 1. The Public Has No Presumptive Right To Access Materials Submitted Solely So That The District Court May Decide Whether Sealed Materials Should Be Unsealed.

The Herald did not properly preserve this issue on appeal.[5]  But even if the Heald had secured a ruling on this point, the district court did not abuse its discretion in declining to publicly file redacted versions of the Non-Party Does' submissions.

*Brown* is clear: "***the presumption of public access does not apply to material that is submitted to the court solely so that the court may decide whether that same material must be disclosed***" or maintained under seal.  *Brown*, 929 F.3d at 50 n.33 (emphasis added.); *TheStreet.com*, 273 F.3d at 233; *see also In re New York Times*

---

[5]    An appellant's failure to seek clarification from the district court on a prior request generally forecloses its ability to demonstrate reversable error on appeal. *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 345–46 (2d Cir. 1994); *Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 621 (2d Cir. 1991).

*Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401, 410 (2d Cir. 2009) (no right of access to *ex parte* or *in camera* proceedings and documents); *United States v. Warburg Pincus LLC*, 2022 WL 2128669, at *9 (D. Vt. June 14, 2022) ("subject email" protected by attorney-client privilege which was attached to a motion to seal "is thus not a judicial document"); *In re New York City Policing During Summer 2020 Demonstrations*, 635 F. Supp. 3d 247, 252 (S.D.N.Y. 2022) ("Likewise, the presumption does not apply to documents attached to a motion to unseal."). And the rule reaffirmed in *Brown* holds regardless of whether the Court considers the issue through the common-law or First Amendment framework.

On the First Amendment front, this Court has "articulated two different approaches" for determining whether the public should have access to particular court filing, though only one is relevant here. *Lugosch*, 435 F.3d at 120. Under the "experience-and-logic" approach, the Court asks "both whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question." *Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 164 (2d Cir. 2013).[6]

---

[6]    Under the second approach – which this Court "adopts only when analyzing judicial documents related to proceedings covered by the First Amendment" – the Court asks whether the documents at issue "are derived from or are a necessary corollary of the capacity to attend the relevant proceedings." *Newsday*, 730 F.3d at 164. That approach does not apply here because documents a district court reviews *in camera* to decide whether they should remain sealed are not judicial documents to which the presumption of public access attaches. *Brown*, 929 F.3d at 50 n.33.

8

"Neither of these factors is present with respect to documents that were submitted to a court *in camera* as part of a … dispute" to determine whether such documents should in fact be made public. *See Wolfson*, 55 F.3d at 61 (applying this principal in the criminal discovery context); *see also TheStreet.com*, 273 F.3d at 233 (rejecting as "without merit" the argument that "Confidential Testimony is a 'judicial document' because the Court reviewed it in order to decide whether or not to enter the protective order").

Similarly, this Court is "not aware … of any common-law principal that documents submitted to a court *in camera* for the sole purpose of confirming that the refusal to disclose them to another party was proper, are to be deemed judicial records open to the public." *Wolfson*, 55 F.3d at 61. The Herald identifies no authority for such a principal either. If anything, the Herald's assertion that the public must have access to the Non-Parties' submissions because the district court relied on them in deciding unsealing echoes precisely the argument that this Court rejected in *TheStreet.com*. "TSC claims that the Confidential Testimony is a 'judicial document' because the Court reviewed it in order to decide whether or not to enter the protective order. This argument is without merit." *TheStreet.Com*, 273 F.3d at 233. "Indeed, the rule [the Herald] urges [this Court] to adopt would transform every document that a court reviews into a 'judicial document' presumptively open to the public, despite well-settled law to the contrary." *Id.* Try

9

as it may, the Herald cannot to "bootstrap" documents to which no presumption of access attaches into "judicial documents" merely by disputing their non-disclosure. *See Newsday*, 730 F.3d at 167 ("The mere fact that a dispute exists about whether a document should be sealed or disclosed, or that a party seeks to sanction another party for disclosing portions of a sealed document, cannot ipso facto create a presumption of access … such a rule would bootstrap materials that are not closely related to judicial proceedings into judicial documents.").

## 2. The District Court Did Not "Effectively Seal[] The Docket Sheet."

The Herald's two remaining complaints merit little discussion.

First, it argues that district court failed to enter on the docket an apparent July 20, 2023 order wherein the court evidently extended John Doe 133's deadline "to file an objection pending the Second Circuit's ruling on appeals filed by Doe 107 and Doe 171." [Intervenor Br. at 34.] Evidently, the Herald was made aware of this order by a brief Plaintiff filed on the public docket on October 6, 2023, responding to Doe 133's objection to unsealing, freely available to the Hearld. [A-609 to 610.] Perhaps if the Herald had brought this issue to the district court's attention at the time that it was on notice of the issue, the district court could have remedied the problem. But the Herald did not. "Arguments raised for the first time on appeal are deemed waived." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 163 (2d Cir. 2011).

10

More to the point though, a court's obligation to publicly file the decisions and orders reflecting the exercise of its Article III duties does not mean that the public enjoys a similar right of access to *letters submitted to* that court "solely so that [it] may decide" sealing disputes, or even administrative issues and scheduling concerning sealing disputes. *Brown*, 929 F.3d at 50 n.33; *see also, e.g.*, *United States v. Sattar*, 471 F. Supp. 2d 380, 389–90 (S.D.N.Y. 2006) ("Each of the documents was a brief letter that defendant['s] … counsel sent to the Court and none of the letters were part of the sentencing submissions to the Court. The letters dealt with administrative matters such as scheduling, submissions and seating. These documents were not submitted in connection with the exercise of the judicial function of sentencing. Thus, it is doubtful that these documents are 'judicial documents.'"). Simply put, "[t]he fact that a document is relevant to the subject matter of a judicial proceeding, or that the proceeding was in some way stimulated by the document, does not make it public." *Newsday*, 730 F.3d at 167.

Further, even if such letters could be construed as judicial documents, the Herald does not explain how letters regarding the extension of due dates for the filing of sealed submissions that the public has no right to view in the first instance played any more than "a negligible role in the performance of [the district court's] Article III duties." *Amodeo II*, 71 F.3d at 1050; *see also Sattar*, 471 F. Supp. 2d at 390 (positing that even if letters regarding scheduling were judicial documents, "these

11

documents are so far removed from the exercise of a judicial function that any presumption of access that attaches to them would be entitled to little weight, and any such presumption would be overcome by the privacy and security matters that caused the letters to be submitted under seal").

Second, the Herald argues that the district court "effectively sealed the docket sheets by shielding submissions and communications" with the Non-Party Does "from the public." [Intervenor Br. at 34-35.] Setting aside the Herald's disregard of the many Non-Party Doe filings that are recorded on the docket sheet, including the district court's docket entries noting its receipt of various Doe objections,[7] the district court's receipt of sealed submissions from Non-Party Does was never a secret in this case. Just the opposite in fact – as the district court explicitly informed the public in the Protocol: "***All submissions by Non-Parties to the Court shall be under seal,***" and many would remain "***permanently sealed inasmuch as they are submitted solely***" to resolved questions of unsealing. [A-589 to 590.] On top of

_____

[7]     [*See* Doc#997 (third party brief filed by John Doe); Doc#980 (letter filed by John Doe); Doc#1019 (letter regarding unsealing protocol filed by John Doe); Doc#1030 (further John Doe letter regarding unsealing protocol); Doc#1040 (further John Doe letter regarding unsealing protocol); Doc#1226 (further John Doe letter regarding unsealing protocol); Doc#1125 (order declining to treat email submissions by Does 1 & 2 as formal objections to unsealing); Doc#1271 (order noting that the court "is in receipt of the briefing regarding objections to unsealing by Non-Party Does 12, 28, 97, 107, 144, 147, 171 and 183"); Doc#1249 (order noting that the court "is in receipt of the briefing regarding the objections to unsealing made by Non-Party Does 17, 53, 54, 55, 56, 73, 93, and 151").]

12

that, the district court announced when it had reviewed and considered objections filed by Non-Party Does in its rulings.  [SPA-71 to 72.]  The cases upon which Herald relies, involving situations where "no information is to be disclosed to the public, including the docket number and case caption" or where "the entire file is sealed" save for "the case caption and docket number," are wholly inapposite. *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 87 (2d Cir. 2004).[8]

By stating that it intended to file redacted versions of the Non-Party Does' filings on the public docket, the district court's Protocol went above and beyond what this Court's precedent requires.  That it failed to satisfy these aspirational goals, however, does not amount to an abuse of discretion.  And neither the Herald, nor any other member of the public can have suffered injury by being denied access to documents they never had a right to view in the first instance.  Accordingly, this Court should reject the Herald's argument and affirm.

---

[8]    *See Doe v. Pub. Citizen*, 749 F.3d 246, 268 (4th Cir. 2014) ("During the pendency of the underlying litigation, the district court allowed the entire docket sheet to remain sealed with the exception of Company Doe's motion to seal. Although the district court ultimately unsealed portions of the docket sheet, numerous entries remain hidden from public view."); *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 2016 WL 1071107, at *1 (S.D.N.Y. Mar. 18, 2016), aff'd, 814 F.3d 132 (2d Cir. 2016) (settlement agreement contingent on keeping complaint and docket sheet wholly sealed).

13

**B.** **The District Court Did Not Abuse Its Discretion In Denying The Herald's Argument To Undo The Last Five Years' Worth Of Proceedings By Unsealing An Inaccurate List Identifying All Non-Party Does.**

Next, the Herald challenges the district court's January 5, 2024 order declining to unseal an inaccurate list of Non-Party Does' "names, pseudonyms, home addresses and the document(s) in which each Doe appears," even though the district court had previously issued a December 18, 2023 ruling containing the same information relative to the Non-Party Does' whose identities the district court unsealed, and even though the district court had, over the last several years, made dozens of specific, individualized findings that the countervailing privacy interests of the Non-Party Does' whose identities would remain sealed outweighed any public presumption to access. [SPA at 138.] The district court's decision was not an abuse of discretion.

As noted, the Herald does not dispute that the list at Doc#1026-3 contains incorrect information, a primary concern taken into account in weighing unsealing. "Raw, unverified information should not be as readily disclosed as matters that are verified." *Amodeo II*, 71 F.3d at 1051. Release of inaccurate information, to which the Non-Party Does have no "fair opportunity to respond" *id.*, and upon which the district did not actually rely on in any event, does little to advance the goal of accurately "monitoring" the performance of Article III functions or "promot[ing] public confidence" in judicial outcomes. *Lugosch*, 435 F.3d at 119, 123. To be sure,

14

that the district court did not actually use Doc#1026-3 for unsealing purposes should itself end the inquiry, since "documents filed by a party are *not* relevant to the performance of a judicial function" are not judicial documents and "no presumption of public access attaches." *Brown*, 929 F.3d at 49 (emphasis in original).

Further, even considering the claim that the district court should have unsealed another, different list of Non-Party Does' identifying information that the Herald failed to identify (*i.e*., Doc#1028), the district court *still* would not have abused its discretion in refusing to do so. By the Herald's own account, the document it wants disclosed "lists all the non-parties listed in any of the originally sealed documents and was used by the court to manage the unsealing process and make its determinations about what information was to be unsealed." [A-618; *see also* SPA-138 (district court describing the list as "akin to a summary exhibit under [Fed.R.Evid.] 1006 – a mere aid prepared by the parties to assist the Court in carrying out its work").] One could hardly imagine a better description of a document falling squarely within the exception noted in *Brown*: a document "submitted to the court solely so that the court may decide whether that same material must be disclosed" on the public docket. *Brown*, 929 F.3d at 50 n.33. "[T]he category of 'judicial documents' should not be readily expanded." *Newsday*, 730 F.3d at 167 n.15. Especially not when the public already has a means of accessing the same information – it can look to the district court's December 18, 2023 order directing

15

the unsealing of the remaining Non-Party Does' names that the district court has determined should be disclosed, and consult the underlying, unsealed documents identified therein. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 609 (1978) (declining to order release of presidential audio tapes where "Reporters … were furnished transcripts of the tapes, which they were free to comment upon and publish," the contents of the tapes "were given wide publicity by all elements of the media" and "[t]here is no question of a truncated flow of information to the public"). Indeed, even when reviewing the type of judicial documents that *are* actually are subject to a presumption of public access, the district court's concern is weighing "the privacy interest of the person resisting disclosure." *Mirlis v. Greer*, 952 F.3d 51, 61(2d Cir. 2020). Not making a job that the Herald can already do less "challenging." [A-618.]

Giving the Herald still the further benefit of assuming that the list at Doc#1028 is a judicial document (and it is not), the Herald makes *no effort whatsoever* to address the countervailing privacy interests of those "parties whose identities the Court has declined to unseal." [SPA-138.] In this regard, the Herald's claim that "each of the[] names" on the list "has already been made public through the court's prior rulings" including in connection with each Non-Party Doe's pseudonymous identifier, is not true. [Intervenor Br. at 32.] Were that the case, the Herald would

16

have no reason to challenge the district court's November 22, 2018 order declining to unseal information relating to Does 12, 17, 58, 73, 93, 97, 124 and 133.

And as the district court explained, redacting the names of those Non-Party Does whose privacy interests trump the presumption of public disclosure from any unsealed list cannot protect such interests. "Even if those Does' names were redacted in an unsealed version of the Document, the alphabetical order of the list could easily lead to speculation about the as-yet-unnamed Does." [SPA-139.] Release of such information even with redactions "is thus more likely to mislead than to inform the public." *Amodeo II*, 71 F.3d at 1052. Court observers "may well know, or be able to infer, the identity of" the Non-Party Does, leaving them "in the unfair position of choosing between suffering the accusations in silence or revealing redacted information." *Id.*[9] Their "[r]eputations [should not] be impaired, personal relationships ruined, and businesses destroyed on the basis of misleading … information." *Id.* at 1048–49.

---

[9] To the extent that the Court addresses such countervailing privacy interest, it would consider "not only of the sensitivity of the information and the subject but also of how the person seeking access intends to use the information." *Mirlis*, 952 F.3d at 61. The Herald intends to report on any potentially unsealed list. But because "the substance of the desired content is publicly available in some format," namely review of the docket with the aid of the December 18, 2023 order, "the primary public interest – general availability of the relevant information – has already been served." *Id.* at 65.

Additionally, the district court reasonably took such unfairness into account in view of the "media frenzy" surrounding this case: "This outcome [injuring Non-Party Does' privacy interests] is particularly likely in the wake of the media frenzy about some supposed 'Epstein List' and the mass speculation about the identities of those in it." [SPA-139.] Even the common-law right of inspection "must give way where records are sought merely 'to gratify private spite or promote public scandal through the publication of the painful and sometimes disgusting details' of cases." *Mirlis*, 952 F.3d at 63 (quoting *Nixon*, 435 U.S. at 598); *see also Amodeo II*, 71 F.3d at 1051 ("Courts have long declined to allow public access simply to cater to a morbid craving for that which is sensational and impure.").

The interest of innocent Non-Party Does who have never been charged with any offense connected to Epstein "weigh heavily" in the court's "balancing equation." *Amodeo II*, 71 F.3d at 1050-51. Here, moreover, the interest of multiple innocent Non-Parties with any number of non-nefarious connections to the Epstein scandal are at stake. "The Document includes minor victims, health care providers, members of law enforcement, and mere bystanders who have not sought publicity on these matters and the Court has already found that their privacy interests outweigh any presumption of public access." [SPA-139.] The district court is required to consider their interest even if they did not appear and object. *Application of Newsday, Inc.*, 895 F.2d 74, 79–80 (2d Cir. 1990).

18

At bottom, the district court, the parties and interested non-parties have devoted extensive time, resources, and attention to the "individualized," nuanced review of each document considered in the unsealing process, which involved "thousands of pages" of information. *Brown*, 929 F.3d at 50-51. The Herald, itself a long-standing participant in the process, cannot seriously contend that the district court abused its discretion in declining to upend its dozens of prior rulings by unsealing the very information that it fastidiously determined should remain sealed. This Court should affirm.

### C. The District Court Did Not Abuse Its Discretion In Redacting John Doe's Name From 363-7.

#### 1. The District Court's Decision.

John Doe 183 asserted certain objections before the district court, including to the proposed unsealing of Docket Entry No. 363-7, an excerpt of Plaintiff's deposition transcript from litigation in a Florida case that Intervenor Alan Dershowitz filed with his motion to intervene in this case. [A-180 to 181; A-44, Doc#363 (A. Dershowitz Declaration), Doc#363-7 (Exhibit G to Declaration).] The district court took up this objection at a hearing on November 18, 2022. [SPA- 49 to 65.] Notably, notwithstanding the district court's directive that the original parties lead the way in identifying docket filings in need of unsealing, it appears that neither Plaintiff nor Maxwell ever asked that the district court unseal Judge Sweet's order

19

actually granting Dershowitz's motion, and no unsealed version of that order is identified on the docket.

After confirming that it had "considered the arguments advanced by [Plaintiff] in her briefing and the submissions from the intervenors," as well as objections from various John Does, [SPA-71 to 72], the district court held that 363-7 should remain sealed:

> This is a deposition excerpt from a Florida state litigation attached by Mr. Dershowitz to his motion to intervene in this case. The document played no apparent role in the Court's decision on the motion. Thus, any presumption of public access to this document is barely cognizable and, accordingly, the objections of the Does to this document being unsealed are sustained. So the motion to unseal 363-7 is denied.

> [SPA-77 to 78.]

Plaintiff disputes the district court's order in this respect on appeal.

### 2. Plaintiff Misconstrues The District Court's Sealing Of Only A Narrow Portion Of 363-7, And The District Court's Reasons For Doing So.

Plaintiff argues that the district court abused its discretion in sustaining John Doe's objection to the unsealing of 363-7. She contends that, based on its observation that 363-7 "played no apparent role in [Judge Sweet's] decision on [Dershowitz's] motion" to intervene, that the district court's sealing decision improperly turned on whether Judge Sweet had actually relied on 363-7 in deciding to permit intervention. Plaintiff argues that the district court therefore must have accorded "different types of documents … different weights of presumption based

20

on the extent to which they were relied upon in resolving the motion," contrary to this Court's holding in *Lugosch*, 435 F.3d at 123.  She is wrong.

Looking to whether a particular filing played an apparent role in a district court's ruling on a particular motion makes sense as an initial step in the unsealing review, because "if … a court determines that documents filed by a party are *not* relevant to the performance of a judicial function, no presumption of public access attaches" *at all*.  *Brown*, 929 F.3d at 49.  Unsealing is off the table entirely until and unless that court first confirms "that the documents at issue are indeed 'judicial documents.'"  *Lugosch*, 435 F.3d at 119.

Nor can it be forgotten that the district court did not seal 363-7 in its entirety. Here, John Doe argued, and the district court appears to have agreed, that the *limited portions* of the excerpt including his name were not "judicial documents" subject to disclosure.  Just months after it issued *Brown v. Maxwell*, in fact, this Court similarly held that the "portions" of a letter filed on the Court's docket naming individual taxpayers were not "judicial documents" because "the only portion of the letter that is sealed," *i.e.*, the individual names, were not relevant to any issues on appeal. *Trump*, 940 F.3d at 152; *see also United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008) (district courts should "avoid sealing judicial documents in their entirety

unless necessary").[10]  As the district court noted at the outset of its ruling, "[t]he documents at issue here were submitted in connection with discovery motions decided by Judge Sweet. The Court concludes that if they are judicial documents, _with an exception or two_, which I will note, to which the presumption of public access attaches."  [SPA-71 (emphasis added.)]   Plaintiff erroneously reads the district court's decision devoid of this context.

Her related argument that the district court "should have … assumed" that the particular excerpt of John Doe's name played a role is mistaken for the same reasons. In determining that the individual taxpayer names in _Trump v. Deutsche Bank_ were not relevant, and thus not "judicial documents," this Court considered whether the parties discussed the redacted material in their briefs, and whether it was informative as to the motion or issue pending before the court.  _See Trump_, 940 F.3d at 151-152 ("In considering that issue, we note that none of the parties briefing the underlying appeal thought that the Court needed to know whether Deutsche Bank had any tax returns within the coverage of the subpoenas or the names of any such taxpayers

---

[10]    Evaluating only the "portion" of the document that John Doe objected to unsealing is equally proper.  _See Trump_, 940 F.3d at 151 ("[T]he sealed letter from Deutsche Bank combines two names that have been redacted from the letter with an argument supporting redaction. The argument portion of the letter is already on the public docket in the form of the redacted version of the letter. So the issue is narrowed to whether the two redacted names constitute a 'judicial document.'"); _see also TheStreet.com_, 273 F.3d at 234 (affirming trial court finding that "there is a new balance that must be drawn now . . . that warrants the unsealing of _those portions_ of the depositions that this court previously sealed" (emphasis added)).

22

filing such returns. Their briefs did not indicate that such information was relevant to any issue we needed to decide in the appeal... the identity of the two taxpayers whose tax returns Deutsche Bank has, is not relevant to any issue we need to decide. The fact that Deutsche Bank has their tax returns adds nothing to the arguments of the parties in the pending appeal.").

Likewise, looking to the documents related to Dershowitz's motion to intervene that have been unsealed (since Judge Sweet's decision seemingly has not), Dershowitz's memorandum in support of his motion to intervene makes no mention of Plaintiff's deposition transcript – much less the appearance of John Doe's name in it. [*See* Doc#364.] Neither does his reply in support. [*See* Doc#436.] Nor does Plaintiff point to any filings related to the motion wherein John Doe's name was referred to, or in any way relevant to whether Dershowitz satisfied the requirements of Rule 24 for intervention. "Because the sealed [excerpt 363-7] (more precisely, the only portion of the [excerpt] that is sealed) is not relevant to any issue in the underlying appeal, it is not a 'judicial document' within the meaning of the decisions requiring unsealing of documents filed with a court." *Trump*, 940 F.3d at 152; *see also S.E.C. v. Telegram Grp. Inc.*, 2020 WL 3264264, at *6 n.3 (S.D.N.Y. June 17, 2020) ("Alternatively, the portions of the documents containing the non-parties' identities and specific identifiable information is not relevant to the issues under consideration by the Court and therefore do not comprise judicial documents.").

23

And although Plaintiff improperly filed an unredacted version of 363-7 on the district court's docket in violation of the court's order redacting John Doe 183's name,[11] her erroneous filing does not destroy John Doe 183's privacy interest in continued sealing. *See United States v. Gotti*, 322 F. Supp. 2d 230, 250 (E.D.N.Y. 2004) ("Although the Court realizes that the Post has made excerpts from these letters public, making this determination somewhat academic, the Court will not compromise the integrity of the judicial process by approving their release and providing new opportunities for their public disclosure."); *see also United States v. Gatto*, 2019 WL 4194569, at *8 (S.D.N.Y. Sept. 3, 2019) (Kaplan, J.) ("That some information relating to the documents in question already has been discussed on the public record or reported in the media does not mean that the third-parties concerned have lost any remaining privacy interests in their contents."). This Court has rejected

---

[11]     Despite the district court's order sustaining John Doe's objection to keep the portions of 363-7 including his name sealed, Plaintiff violated the court's November 18, 2022 order by ***leaving multiple references to John Doe 183's name on the public filing unredacted*** when she filed 363-7 on the docket (even though she somehow remembered to properly redact the names of other Non-Party Does in the same excerpt). John Doe's counsel brought the matter to the district court's attention immediately by letter on January 9, 2024, the same date Plaintiff's counsel made the "mistaken" filing. [Doc#1335, 1336.] Also that same day, the district court struck Plaintiff's filing of 363-7 from the record "because it contains information that should have been redacted." [A-620.] And because Plaintiff repeatedly disclosed names that the district court ordered sealed, apparently causing some Non-Party Does to "fear for their safety," the court reminded Plaintiff's "Counsel … of the human cost of inadvertently disclosing the names and identifying information of Does who should have remained under seal." [Doc#1339.]

24

similar attempts to "create a legal loophole" that would allow parties to transform confidential materials into publicly filed "judicial documents" subject to a presumption of access in the arbitration setting, and it should do the same here. *See In re IBM Arb. Agreement Litig.*, 76 F.4th 74, 86 (2d Cir. 2023) ("Plaintiffs' counsel may not end-run the Confidentiality Provision [of the arbitration agreement] by filing protected materials and then invoking the presumption of access to judicial documents.").

   3.  **Even If The Limited Portions Of 363-7 Identifying John Doe 183 By Name Constitute "Judicial Documents," John Doe's Countervailing Privacy Interest Far Outweighs The Public's Interest In Accessing False, "Sensational" And "Impure" Information.**

Should the Court nevertheless conclude that the references to John Doe's name do amount to judicial documents, their role in the Court's exercise of its Article III functions should not be overstated. The deposition excerpt 363-7 was attached to a non-dispositive motion, which itself never discussed the excerpt, and the results of which the public cannot assess in any event because neither Plaintiff nor Maxwell ever sought to unseal Judge Sweet's decision. *See Brown*, 929 F.3d at 53 (only a "lesser" presumption of public access applies to materials submitted with non-dispositive motions); *see also e.g.*, *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 2022 WL 2702378, at *17 (E.D.N.Y. Feb. 11, 2022) ("Unlike dispositive motions, related supporting documents, or trial documents, the exhibits [here were] before the

25

Court purely for the purposes of resolving a discovery dispute, and so the confidential nature of the documents is sufficient to overcome the presumption of public access for these non-judicial documents.").

Where a judicial document contains identifying information – including names – having no bearing on the substance of the underlying motion, this Court and others have routinely held that the objecting party's countervailing privacy interest in maintaining confidentiality will control. *See United States v. Am. Univ. of Beirut*, 718 F. App'x 80, 82 (2d Cir. 2018) (affirming that, even though "[t]here is no question that the documents at issue are judicial documents, the district court "did not exceed the bounds of is discretion in ordering the limited seal [of the relator's name] here"); *see also In re IBM Arb. Agreement Litig.*, 2022 WL 3043220, at *3 (S.D.N.Y. Aug. 2, 2022), *aff'd*, 76 F.4th 74 (2d Cir. 2023) ("[T]the parties' submissions in connection with IBM's motion to dismiss are … plainly judicial documents. That said, the Court agrees with IBM that the following information should be redacted from Plaintiffs' opposition to IBM's motion to dismiss: '(a) the names and titles of executives, managers, and other IBM employees'"); *Kewazinga Corp. v. Microsoft Corp.*, 2021 WL 1222122, at *5 (S.D.N.Y. Mar. 31, 2021) ("Microsoft seeks to redact the personally identifiable information … of its employees … Because of the significant privacy interests of non-parties, and the

lack of relevance of this information to any issue in this litigation, the request to redact the e-mail addresses of Microsoft's employees is granted.").

Here, moreover, Plaintiff asserts no argument whatsoever as to why the public's claim of access to the "[r]aw, unverified information" never proven before any court in the excerpt outweighs John Doe's privacy interests as an innocent third party. *Amodeo II*, 71 F.3d at 1048–49, 1051. "As the Second Circuit has explained, courts 'have long declined to allow public access simply to cater 'to a morbid craving for that which is sensational and impure." *United States v. Smith*, 985 F. Supp. 2d 506, 524–25 (S.D.N.Y. 2013) (citing *Amodeo II*, 71 F.3d at 1051). That the excerpt at issue here contains sworn testimony, no matter its falsity, does nothing to diminish the risk that it contains false but salacious misinformation. As this Court acknowledged in *Brown*, "bad actors can defame opponents in court pleadings *or depositions* without fear of lawsuit and liability." *Brown*, 929 F.3d at 47 (emphasis added.).

The district court properly declined to "promote public scandal" by sealing John Doe's name *see Nixon*, 435 U.S. at 598, and this Court should affirm.

## <u>CONCLUSION</u>

For these many reasons, the district court's judgment should be affirmed.

Respectfully submitted,

/s/ Marion H. Little, Jr.
Marion H. Little, Jr. (Ohio Bar # 0042679)
Matthew S. Zeiger (Ohio Bar #0075117)
ZEIGER, TIGGES & LITTLE LLP
41 S. High St., Suite 3500
Columbus, OH 43215-6110
Phone: (614) 365-9900
Fax: (614) 365-7900
little@litohio.com
zeigerm@litohio.com

Attorneys For Amicus Curiae

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned hereby certifies pursuant to Fed. R. App. Pro. 32(g) as follows:

1.    This brief complies with the type-volume limitation of Fed. R. App. Pro. 29(a)(5), as modified by Second Circuit Rule 29.1(c), because it contains 6,918 words exclusive of those parts of the brief exempted by Fed. R. App. Pro. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. Pro. 32(a)(5) and the type style requirements of Fed. R. App. Pro. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office 365 in Times New Roman 14-point type.

Dated:  September 24, 2024        /s/ Marion H. Little, Jr.
                                     Marion H. Little, Jr.   (0042679)

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on September 24, 2024, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/ Marion H. Little, Jr.
Marion H. Little, Jr. (0042679)

1038374

30