24-182 (L)
*Giuffre v. Maxwell*

# In the
# United States Court of Appeals
# for the Second Circuit

—————

AUGUST TERM 2024

Nos. 24-182-cv(L), 24-203-cv(CON)

VIRGINIA GIUFFRE,
*Plaintiff-Appellant*,

JULIE BROWN, MIAMI HERALD MEDIA CO.
*Intervenors-Appellants*,

v.

GHISLAINE MAXWELL,
*Defendant-Appellee*.

—————

On Appeal from the United States District Court
for the Southern District of New York

—————

SUBMITTED: APRIL 14, 2025
DECIDED: JULY 23, 2025

—————

Before: CABRANES, RAGGI, and PÉREZ, *Circuit Judges*.

—————

Following this court's remand in *Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019), the United States District Court for the Southern District of New York (Preska, *J*.) individually reviewed and unsealed voluminous

documents in this now-settled defamation action. Plaintiff Virginia Giuffre and Intervenors the Miami Herald Media Company and *Miami Herald* reporter Julie Brown appeal from several district court orders declining to unseal certain documents. They submit that the district court erred in (1) holding that undecided motions rendered moot by the parties' settlement of this case were categorically not "judicial documents" subject to a presumption of public access; (2) holding that the transcript of Giuffre's deposition in a separate action, offered by a third-party in support of a motion to intervene in this case, was entitled to no more than a "barely cognizable" presumption of public access because the district court did not rely on it in granting the motion; (3) finding that as to parts of defendant Ghislaine Maxwell's deposition concerning her sexual relationships with consenting adults, her privacy interests outweighed any presumption of public access; (4) finding the countervailing privacy interests of various pseudonymized third-parties to outweigh any public right of access to parts of judicial documents containing identifying information; (5) declining to make public the redacted list of all pseudonymized third-parties used by the district court in its unsealing review; and (6) declining to make public certain pseudonymized third-parties' submissions made in support of continued sealing.

Defendant Maxwell argues that this court is without jurisdiction to review the first of these arguments, which challenges the district court's orders of December 16, 2019, and January 13, 2020, because timely notices of appeal were not filed therefrom. In any event, she submits that the district court did not err in any of the respects argued on this appeal.

This court concludes that the December 2019 and January 2020 Orders were not final orders and, thus, that this court has jurisdiction to review all

orders challenged on this appeal. Upon such review, we identify no error in the district court's decisions not to unseal or make public many of the documents at issue. As to others, however, we here clarify that (1) the judicial nature of a document is properly determined at the time it is filed such that a motion that is a judicial document when filed does not cease to be so because, before the motion is decided, the case settles thereby making the motion moot; (2) the fact that a court does not rely on a particular judicial document in making a ruling does not, by itself, mean that the presumption of public access attending that document is only barely cognizable; and (3) a motion to seal or unseal judicial documents invokes the court's supervisory judicial power and, thus, filings relevant to that motion are themselves judicial documents. To the extent the district court concluded otherwise, we vacate its denials of unsealing and remand for further individual review of sealed documents and unsealing as warranted consistent with this opinion. In all other respects, however, we affirm.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

––––––––––––––––––

Sigrid S. McCawley, Boies Schiller Flexner LLP, Fort Lauderdale, FL, *for Plaintiff-Appellant.*

Christine N. Walz, Scott D. Ponce, Cynthia A. Gierhart, Holland & Knight LLP, New York, NY, Miami, FL, Washington, D.C., *for Intervenors-Appellants.*

Adam Mueller, Haddon, Morgan & Foreman, P.C., Denver, CO, *for Defendant-Appellee.*

Marion H. Little, Jr., Matthew S. Zeiger, Zeiger, Tigges & Little LLP, Columbus, OH, *for Amicus Curiae John Doe 183, in support of Defendant-Appellee*.

Michael G. McGovern, Ropes & Gray LLP, New York, NY, *for Amicus Curiae John Doe 133, in support of Defendant-Appellee*.

———————————

PER CURIAM:

Following this court's remand in *Brown v. Maxwell* ("*Maxwell I*"), 929 F.3d 41 (2d Cir. 2019), the United States District Court for the Southern District of New York (Loretta A. Preska, *Judge)* reviewed hundreds of sealed documents in this now-settled defamation action and, after considering the privacy interests of more than a hundred third-parties, issued a series of orders directing that a large number of the documents be unsealed either in whole or in part.[1] Plaintiff Virginia Giuffre, now deceased, and Intervenors the Miami Herald Media Company and *Miami Herald* reporter Julie Brown (jointly, the "*Herald*") appeal from those parts of the district court's orders declining to unseal certain documents.[2] They submit that the district court

---

[1] The documents were sealed on order of now-deceased Judge Robert W. Sweet, who had presided over the defamation action before its settlement. On remand, the case was reassigned to Judge Preska.

[2] On May 5, 2025, Giuffre's counsel informed the court of her client's April 25, 2025 death in Australia. Due to pending probate proceedings in Australia, counsel has now filed a motion seeking an extension of time to move for substitution beyond the August 4, 2025 deadline established by Fed. R. Civ. P. 25(a)(1) and Fed. R. App. P. 43(a)(1). Because most of Giuffre's arguments have been adopted by the *Herald*, and no party has objected, we here consider such arguments without regard to which party raised them initially.

4

erred as a matter of law in (1) holding that undecided motions rendered moot by the parties' settlement of this case were categorically not "judicial documents" subject to a presumption of public access; (2) holding that the transcript of Giuffre's deposition in a separate action,[3] offered by a third-party in support of a motion to intervene in this case, was entitled to no more than a barely cognizable presumption of public access because the district court did not rely on it in ruling on intervention; (3) finding that, as to parts of defendant Ghislaine Maxwell's deposition concerning her sexual relationships with consenting adults, her privacy interests outweighed any presumption of public access; (4) finding that the countervailing privacy interests of various pseudonymized third-parties outweighed any presumption of public access to parts of judicial documents containing identifying information; (5) declining to make public a redacted list of pseudonymized third-parties that the district court had used in conducting its unsealing review; and (6) declining to make public the submissions of certain pseudonymized third-parties made in support of continued sealing.

Defendant Maxwell argues that this court is without jurisdiction to review Appellants' challenges to the district court's orders of December 16, 2019, and January 19, 2020, as no timely appeal was taken from either order. *See* Order, *Giuffre v. Maxwell*, No. 15-cv-7433 (S.D.N.Y. Dec. 16, 2019) (the "December 2019 Order"); *Giuffre v. Maxwell*, No. 15-cv-7433, 2020 WL 133570 (S.D.N.Y. Jan. 13, 2020) (the "January 2020 Order"). In any event, Maxwell submits that the district court did not err in any of the respects argued on this appeal.

---

[3] *See Edwards v. Dershowitz*, 15-00072 (Fla. 17th Jud. Cir. Ct.).

For reasons stated in this opinion, we conclude that the December 2019 and January 2020 Orders were not final orders and, thus, this court has jurisdiction to review all orders challenged on this appeal. Upon such review, we identify no error in the district court's decisions not to unseal or make public many of the documents here at issue. As to others, however, we here clarify that (1) the judicial nature of a document is properly determined at the time it is filed such that a motion that is a judicial document when filed does not cease to be so because, before the motion is decided, the case settles thereby making the motion moot; (2) the fact that a court does not rely on a particular judicial document in making a ruling does not, by itself, mean that the presumption of public access attending that document is only barely cognizable; and (3) a motion to seal or unseal judicial documents invokes the court's supervisory judicial power and, thus, filings relevant to that motion are themselves judicial documents. To the extent the district court concluded otherwise, we vacate its denials of unsealing, and we remand for further individual review of sealed documents and unsealing as warranted consistent with this opinion. In all other respects, however, we reject the parties' claims of error and affirm the orders of the district court.

## BACKGROUND

This appeal has its origins in a 2015 defamation action brought in the Southern District of New York by plaintiff Virginia Giuffre, a victim of sexual trafficking by financier Jeffrey Epstein. Giuffre charged defendant Ghislaine Maxwell, an Epstein associate, with defaming her by publicly calling her statements implicating Maxwell in Epstein's trafficking "obvious

lies." *Maxwell I*, 929 F.3d at 46.[4]  In the extensive discovery conducted in that action, several hundred documents were produced, prompting multiple sealing motions to Judge Sweet, which resulted in "nearly one-fifth of the docket" being filed under seal.  *Id*.[5]  Those documents, which included all filings pertaining to Maxwell's summary judgment motion, remained under seal when, on May 24, 2017, the parties executed a settlement agreement, prompting the district court to close the case the following day.

Both before and after closure of Giuffre's defamation action against Maxwell, various third-parties sought to intervene to seek the unsealing of numerous documents filed in that case.  Among these parties was the *Herald*, which so moved on April 6, 2018.  The district court allowed most third-parties (including the *Herald*) to intervene, but denied their motions for unsealing.  On a consolidated appeal from those denials, this court ruled that materials submitted in connection with Maxwell's denied summary judgment motion in the defamation action were judicial documents subject to a strong presumption of public access, determined that the presumption was not overcome by countervailing interests, and ordered the materials

---

[4] Epstein and Maxwell were each federally indicted on various charges related to a scheme of sexually trafficking minors.  *See United States v. Maxwell*, 118 F.4th 256, 262 & n.5 (2d Cir. 2024); *In re Wild*, 994 F.3d 1244, 1249 (11th Cir. 2021) (*en banc*).  Epstein died, apparently by his own hand, before the case against him came to trial.  *See In re Wild*, 994 F.3d at 1249.  Maxwell stood trial, was found guilty by a jury, and sentenced to a term of 240 months' incarceration, which she is presently serving.  *See United States v. Maxwell*, 118 F.4th at 263.

[5] In *Maxwell I*, this court noted that "[d]ue to the volume of sealing requests filed during discovery," the district court entered a sealing order that "disposed of the requirement that the parties file individual letter briefs to request sealing and prospectively granted all of the parties' future sealing requests," thereby "effectively ced[ing] control of the sealing process to the parties themselves."  *Id*.

unsealed (subject to minimal redactions). *See id.* at 47–48, 53. This court further ruled that materials submitted in connection with and relevant to certain non-dispositive motions, including discovery and *in limine* motions, were also judicial documents entitled to a "substantial" presumption of public access, albeit a lesser one than that accorded dispositive motions. *Id.* at 53. Accordingly, we vacated the district court's orders denying unsealing of such documents and remanded the case to the district court with directions that the court individually review and unseal them as warranted after balancing the presumption of public access against any countervailing privacy interests. *See id.* at 50–51, 53.[6]

Toward that end, on September 4, 2019, the district court directed the parties to identify the sealed materials by docket number and to categorize them according to their status as judicial or non-judicial documents. After considering the parties' submissions, on December 16, 2019, the district court made the first ruling challenged on this appeal, *i.e.*, that "only motions actually decided by Judge Sweet—along with documents relevant to Judge Sweet's decision on those motions—are properly considered judicial documents to which a presumption of public access attaches." December 2019 Order at 1. The reasons for this decision were set forth in a January 13, 2020 opinion & order, which stated in the converse that any motions that "were not decided" by Judge Sweet at the time the defamation action was settled had become moot and, therefore, the motions and materials related

---

[6] In so ruling, this court recognized the potential for persons to use court files "to promote scandal arising out of unproven potentially libelous statements," and described various methods available "to protect the judicial process from being coopted for such purposes." *Id.* at 51–52 (internal quotation marks omitted). No such concerns are raised on this appeal.

to them were "not judicial documents subject to the presumption of public access." January 2020 Order, 2020 WL 133570, at *4. Thus, the district court did not review undecided motion documents individually or order any unsealed.

Thereafter, on March 31, 2020, the district court issued an unsealing protocol for its individual review of the large number of remaining materials. Pursuant thereto, the district court and the parties agreed upon "a list of non-parties whose privacy, reputational or other interests may be implicated by the unsealing." Order and Protocol for Unsealing Decided Motions at 1, *Giuffre v. Maxwell*, No. 15-cv-7433 (S.D.N.Y. Mar. 31, 2020). These parties' identities were pseudonymized by referring to them on the public record as "Does," *i.e.*, "Doe 1," "Doe 2," and so on.

Over the next few years, the district court individually reviewed hundreds of sealed documents, considered the asserted privacy interests of more than a hundred third-parties, conducted additional hearings, and issued further decisions as to unsealing, some of which prompted appeals to this court challenging orders to unseal.[7]

On December 18, 2023, the district court entered its final unsealing order. *See Giuffre v. Maxwell*, No. 15-cv-7433, 2023 WL 8715697 (S.D.N.Y. Dec. 18, 2023). Approximately two weeks later, on January 5, 2024, the district court issued a further order denying the *Herald*'s and Intervenor

_____

[7] *See, e.g., Doe 171 v. Giuffre*, No. 22-3050, 2023 WL 4926196, at *1 (2d Cir. Aug. 2, 2023) (summary order) (affirming unsealing of certain documents); *Doe 107 v. Giuffre*, No. 22-3042, 2023 WL 4926195, at *1 (2d Cir. Aug. 2, 2023) (summary order) (remanding for further consideration of whether to maintain certain documents under seal); *Giuffre v. Maxwell*, 827 F. App'x 144, 145 (2d Cir. 2020) (summary order) (affirming unsealing of certain documents).

Alan Dershowitz's requests to release the list of Does involved in this action that the court used in tracking the reviewed materials.  *See Giuffre v. Maxwell*, No. 15-cv-7433, 2024 WL 68373, at *1 (S.D.N.Y. Jan. 5, 2024).  On January 17, 2024, Giuffre and the *Herald* each filed notices of appeal challenging certain denials of unsealing reflected in these two orders; the earlier December 2019 and January 2020 Orders; and various oral rulings pronounced on January 19, 2021, July 1, 2021, April 19, 2022, and November 18, 2022.  *See* Notices of Appeal, *Giuffre v. Maxwell*, 15-cv-7433 (S.D.N.Y. Jan. 17, 2024); *see also* Transcripts, *Giuffre v. Maxwell*, No. 15-cv-7433 (S.D.N.Y. Nov. 18, 2022; Apr. 19, 2022; July 1, 2021; Jan. 19, 2021).  This court consolidated their appeals.

## DISCUSSION

### I.    Jurisdiction

Maxwell argues that this court is without jurisdiction to hear so much of this appeal as challenges the district court's December 2019 and January 2020 Orders because they constituted "a final judgment and not a collateral order" which had to be appealed within 30 days of entry, making the January 17, 2024 notices of appeal in this case untimely by several years. Maxwell Br. at 14–18.  We are not persuaded.

Appellate jurisdiction generally exists only over the "final decisions of the district courts," 28 U.S.C. § 1291, and only if a notice of appeal is filed "within 30 days after entry of the judgment or order appealed from," Fed. R. App. P. 4(a)(1)(A); *see Bowles v. Russell*, 551 U.S. 205, 209 (2007) (holding timely appeal requirement is "mandatory and jurisdictional" (internal quotation marks omitted)).  Once final judgment has been entered, however, the parties may appeal "claims of district court error at any stage of the

litigation." *Amara v. Cigna Corp.*, 53 F.4th 241, 248 (2d Cir. 2022) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996)).

In deciding whether a district court order is a final decision, we look to "general finality principles," *id.* at 250, which instruct that a final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment," *Vera v. Republic of Cuba*, 802 F.3d 242, 246 (2d Cir. 2015) (internal quotation marks omitted). Applying those principles to a challenged postjudgment order, we will defer appellate review of such an order "until the district court has decided all *related* issues to prevent piecemeal appeals of interlocutory orders in ongoing postjudgment proceedings." *Amara v. Cigna Corp.*, 53 F.4th at 251 (emphasis in original) (internal quotation marks omitted). Thus, we have held jurisdiction lacking to review "postjudgment discovery orders," but available to review "postjudgment orders denying motions for recusal" or for "disqualif[ication of] a court-appointed monitor" because in the first scenario the "relevant final decision . . . is the subsequent judgment that concludes the . . . proceedings," while in the latter two scenarios "the district court had reached its final disposition on the relevant issue." *Id.* (internal quotation marks omitted and alteration adopted). Similarly, we have held jurisdiction lacking to review a finding of civil contempt until there has been actual defiance and sanctions imposed, but we have held an order denying contempt immediately appealable because "no further district court action is necessary to give life" to the order. *Id.* (internal quotation marks omitted).

Maxwell argues that the district court's postjudgment December 2019 and January 2020 Orders were final because they "categorically removed the undecided motions . . . from the unsealing process." Maxwell Br. at 17. That is incorrect. In the January 2020 Order, the district court specifically

left open the possibility that the undecided motions and their attending materials might be unsealed subject to further review:

> Notwithstanding the fact that the undecided motions and the papers associated with them are not judicial documents, *they may eventually be unsealed* because they are in some way relevant to Judge Sweet's actual decisions—which are numerous—that are certainly subject to the presumption of public access. Ms. Giuffre raises such a possibility in her briefing, suggesting that the undecided motions can fairly be assumed to have played a role in Judge Sweet's deliberations as to other rulings. At this stage in the unsealing process, the Court declines Ms. Giuffre's invitation to assume categorically that the undecided motions are germane to Judge Sweet's rulings on the decided motions but nonetheless *acknowledges the realistic possibility that they are relevant and thus ripe for unsealing.*

January 2020 Order, 2020 WL 133570, at *4 (emphases added) (internal quotation marks and citations omitted; alterations adopted).

Thus, the district court's challenged December 2019 and January 2020 Orders were not final decisions denying unsealing but, rather, steps in the process by which the district court would determine which documents would be unsealed. These orders resulted in the materials not being unsealed at that time, but they specifically left open the possibility of their being unsealed later in the course of the district court's ongoing review.

Our reasoning in *Amara v. Cigna* reinforces that conclusion. When that appeal was heard, this court had already affirmed a final judgment "ordering Cigna to reform its pension plan to pay greater benefits to" a large class of plaintiffs. 53 F.4th at 245. Thereafter, the district court resolved the parties' disputes over the calculation of those benefits in a series of

12

"Methodology Orders," the last of which issued in November 2017. *Id.* Amara's counsel then sought attorneys' fees based on the total benefits recovered. *See id.* at 245–46. "In April 2019—almost six months after the district court awarded attorney's fees and over a year after the last Methodology Order—Plaintiffs moved to enforce the Methodology Orders and to hold Cigna in contempt and impose sanctions." *Id*. at 246. After that motion was denied, Amara sought to appeal "from both the Methodology Orders and the Sanctions Order." *Id.* at 246–47.

In dismissing that part of the appeal challenging the Methodology Orders as untimely, this court concluded that those orders were final when entered because (1) Cigna "relied on the Methodology Orders to calculate [the] benefits" it had already disbursed, (2) the plaintiffs themselves had acknowledged in December 2017 that "the district court had completed its orders on the methodology for computing individual relief," and (3) the plaintiffs' "motion for contempt and sanctions necessarily presuppose[d] that the Methodology Orders were final" because "the district court could not have revised the Methodology Orders and simultaneously held Cigna in contempt and imposed sanctions for violating the newly revised orders." *Id.* at 254–55 (internal quotation marks omitted) (alteration adopted).

The orders appealed from here are readily distinguishable in ways that defeat Maxwell's claim of finality. First, Maxwell has not argued any detrimental reliance on the December 2019 and January 2020 Orders, much less reliance akin to Cigna's actual disbursements of benefits in *Amara*. Nor has Maxwell pointed to anywhere in the record that Giuffre or the *Herald* conceded that these orders were final with respect to the unsealing of undecided motion materials. On the contrary, the district court acknowledged that such materials might yet be unsealed as relevant to

13

decided motions. *See supra* at 11–12. Finally, unlike the subsequent motions in *Amara*, which necessarily presupposed the finality of the Methodology Orders, subsequent proceedings in this case did not depend on any presumption of finality as to the December 2019 or January 2020 Orders.

*Radio Station WOW v. Johnson*, 326 U.S. 120 (1945), relied on by Maxwell, warrants no different conclusion. There, the Supreme Court held that a decision by a state's highest court "not only direct[ing] a transfer of property, but also order[ing] an accounting of profits from such property" was "final," notwithstanding that the order clearly contemplated ongoing proceedings. *Id.* at 124–25. The December 2019 and January 2020 Orders here at issue are not analogous. Certainly, they do not direct the immediate transfer of any property. However apt that analogy might be if the district court had ordered the undecided motion materials *unsealed* in 2019 or 2020—thus making them available for use by Giuffre and the *Herald* in a way that might be impossible to unwind on an appeal heard several years later—it cannot be drawn here where the district court maintained the materials under seal while leaving open the possibility of unsealing upon review of still other materials.

In sum, the district court's ruling in the December 2019 and January 2020 Orders that motions undecided at the time of the defamation action's settlement were not judicial documents subject to a presumption of public access was a step in the process for deciding what materials would be unsealed. It was not a final decision from which an appeal had to be taken within 30 days.

Accordingly, we have jurisdiction over all orders challenged on this appeal, and we proceed to address the merits of the parties' arguments.

14

## II.    The Challenged Denials of Unsealing

The law is well established that "[w]hen reviewing a district court's decision to seal a filing or to maintain such a seal, we examine the court's factual findings for clear error, its legal determinations de novo, and its ultimate decision to seal or unseal for abuse of discretion."  *Maxwell I*, 929 F.3d at 47 (internal quotation marks omitted).  Here, the record shows that, on remand from our decision in *Maxwell I*, the district court devoted considerable effort and time to the careful review of more than a hundred sealed documents; that, as a result of that effort, the district court unsealed and made publicly available a large number of those documents; and that it acted well within its discretion in maintaining many others under seal.  In a few areas, however, we are compelled to identify legal errors and to remand for further review of certain documents.

### A.  Undecided Motions and Attendant Materials

In deciding whether to seal or unseal filed materials, a court properly conducts a three-step inquiry:

> First, the court determines whether the record at issue is a judicial document—a document to which the presumption of public access attaches.  Second, if the record sought is determined to be a judicial document, the court proceeds to determine the weight of the presumption of access to that document.  Third, the court must identify all of the factors that legitimately counsel against disclosure of the judicial document and balance those factors against the weight properly accorded the presumption of access.

*Stafford v. Int'l Bus. Machs. Corp.*, 78 F.4th 62, 69–70 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 1011 (2024) (internal quotation marks and citations omitted); *see*

15

*Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d 110, 119–20 (2d Cir. 2006) (discussing same three-step analysis).

Giuffre and the *Herald* argue that the district court erred as a matter of law at the first step when, in its December 2019 and January 2020 Orders, the court ruled that motions undecided at the time the underlying defamation action settled were categorically not judicial documents entitled to a presumption of public access and, on that ground, declined to review those documents individually for possible unsealing. We agree that no such categorical conclusion was warranted. To the extent that error may be attributable to any lack of clarity in this court's precedents, *see* January 2020 Order, 2020 WL 133570, at *3 (referencing "lack of clear guidance from the Court of Appeals"), we here state explicitly that a judicial document determination is properly made by evaluating the relevant materials at the time of their filing with the court. Where materials pertain to a motion, the subsequent mooting of the motion is irrelevant to that determination.

To explain, we reiterate some basic principles pertinent to the identification and public disclosure of judicial documents. As this court has recognized, "[t]he common law right of public access to judicial documents is firmly rooted in our nation's history." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d at 119. The presumption of public access is based on the need for independent federal courts "to have a measure of accountability and for the public to have confidence in the administration of justice." *Id.* (quoting *United States v. Amodeo ("Amodeo II")*, 71 F.3d 1044, 1048 (2d Cir. 1995)). Thus, "professional and public monitoring" of the courts "is an essential feature of democratic control" of the third branch of government, which necessarily requires public "access to testimony and documents that are

used in the performance of Article III functions." *Id.* (quoting *Amodeo II*, 71 F.3d at 1048).

While most material filed on a federal court's docket in the ordinary course of litigation will consist of judicial documents giving rise to a presumption of public access, the conclusion does not necessarily apply to every paper or document filed with a court. *See United States v. Amodeo* ("*Amodeo I*"), 44 F.3d 141, 145 (2d Cir. 1995); *accord Maxwell I*, 929 F.3d at 51–52 (observing that material rejected or stricken by court as "redundant, immaterial, impertinent, or scandalous . . . would not be considered a judicial document and would enjoy no presumption of public access" (internal quotation marks omitted)).

To qualify as a "judicial document" the materials at issue must be "relevant to the performance of the judicial function and useful in the judicial process." *Amodeo I*, 44 F.3d at 145; *accord Lugosch v. Pyramid Co. of Onondaga*, 436 F.3d at 119. In this context, "judicial function" refers to a federal court's exercise of power under Article III of the Constitution. *See Amodeo II*, 71 F.3d at 1049–50.

In *Lugosch*, this court recognized that materials submitted for consideration in an as-yet-undecided summary judgment motion constitute judicial documents "as a matter of law" because the motion sought to have the court "adjudicate[] substantive rights." 435 F.3d at 121–22 (internal quotation marks omitted). We specifically rejected an argument that it would be "premature" to determine the judicial nature of a document before a court "knows the disposition of the underlying motion." *Id.* at 121. Insofar as an earlier case had identified a *decided* summary judgment motion as a judicial document, we identified no material distinction between decided

and undecided motions, stating that "*nothing about that timing was relevant to our conclusion*" in the earlier case. *Id.* (emphasis added) (discussing *Joy v. North*, 692 F.2d 880 (2d Cir. 1982)). Thus, in *Lugosch*, we ruled that summary judgment documents "are judicial documents to which a presumption of immediate public access attaches" even before the motion has been decided. *Id.* at 126.

The district court distinguished *Lugosch* because that case's "holding specifically applied to 'contested documents,'" which it construed to mean documents pertaining to "a pending motion for summary judgment in active litigation, not motions that were rendered moot by settlement of a case." *See* January 2020 Order, 2020 WL 133570, at *3 n.3 (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d at 123) (emphasis omitted). *Lugosch*, however, did not use the phrase "contested documents" to refer to undecided motion materials as such but, rather, to the documents whose *sealing* was disputed in that case.[8]

Even if *Lugosch* had used the term "contested documents" as the district court understood it, that would not support a conclusion that documents cease to be judicial when the motion to which they pertain becomes moot. Certainly, *Lugosch* itself did not explicitly (or implicitly)

---

[8] This court described the documents at issue in *Lugosch* as consisting of "at least twenty-five sealed documents or sets of documents, for a total volume of approximately 4000 pages," and thereafter referred to those documents as "the contested documents." 435 F.3d at 113–26; *see id.* at 115 ("[D]efendants called into question, *inter alia,* the value of the contested documents to the district court in ruling on the summary judgment motion. In turn, the plaintiffs[] . . . not[ed] that they indeed intended to rely on some of the contested documents [*i.e.*, the sealed documents] at oral argument and [sought] guidance from the court on the use of those documents at oral argument.").

exclude such materials from its holding. Moreover, two subsequent decisions of this court establish that the term "judicial documents" is not so limited: *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132 (2d Cir. 2016), and *Maxwell I*.

At issue in *Bernstein* was a sealed complaint that the parties sought to maintain under seal after their settlement of the case. In upholding the district court's denial of permanent sealing, this court "easily conclude[d]" that the complaint was a "judicial document": "A complaint, which initiates judicial proceedings, is the cornerstone of every case, the very architecture of the lawsuit, and access to the complaint is almost always necessary if the public is to understand a court's decision." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d at 140 (internal quotation marks omitted). Settlement of the case warranted no different conclusion for two reasons:

> [1] It is true that settlement of a case precludes the judicial determination of the pleadings' veracity and legal sufficiency. But attorneys and others submitting pleadings are under an obligation to ensure, when submitting pleadings, that "the factual contentions made have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."

*Id*. (alteration adopted) (quoting Fed. R. Civ. P. 11(b)(3)). This first reason is not confined to pleadings because the rule applies equally to "a pleading, written motion, or other paper." Fed. R. Civ. P. 11(b).

> [2] In any event, the fact of filing a complaint, whatever its veracity, is a significant matter of record. Even in the settlement context, the inspection of pleadings allows the public to discern the prevalence of certain types of cases, the

19

> nature of the parties to particular kinds of actions, information about the settlement rates in different areas of law, and the types of materials that are likely to be sealed. Thus, pleadings are considered judicial records even when the case is pending before judgment or resolved by settlement.

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d at 140 (internal quotation marks and citations omitted; alteration adopted). As for this second reason, *Lugosch v. Pyramid Co. of Onondaga* makes plain that it applies to dispositive motions as well as pleadings. *See* 435 F.3d at 124 ("An adjudication [including by summary judgment] is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny." (internal quotation marks and alteration omitted)). Further, *Maxwell I* extends the reasoning to non-dispositive motions—*e.g.*, "motions to compel testimony, to quash trial subpoenae, and to exclude certain deposition testimony"—holding that they qualify as judicial documents "subject to at least some presumption of public access." 929 F.3d at 50 (noting that "[a]ll such motions, at least on their face, call upon the court to exercise its Article III powers" of adjudication and are "of value 'to those monitoring the federal courts'" (quoting *Amodeo II*, 71 F.3d at 1050)). Together, these precedents clarify that *Bernstein*'s second reason does not establish a prerequisite for recognizing material as a judicial document at the first step of analysis. Instead, it explains why pleadings and dispositive motions that qualify as judicial documents bear a particularly strong presumption of public access at the second step— settlement before adjudication notwithstanding. Thus, because *Maxwell I* recognized that the judicial authority invoked by some non-dispositive motions "is ancillary to the court's core role in adjudicating a case," the presumption of public access accorded to such motions is "generally

20

somewhat lower than the presumption applied to material introduced at trial, or in connection with dispositive motions." *Id.* For non-dispositive motions, then, at the third and final step of analysis, "a court must still articulate specific and substantial reasons for sealing such material, [but] the reasons usually need not be as compelling as those required to seal summary judgment filings," trial evidence, or pleadings. *Id.*

Even more relevant here than *Maxwell I*'s explanation for why the relative strength of the presumption of access may differ among different kinds of judicial documents is its holding that that the identification of motions—non-dispositive as well as dispositive—as judicial documents does not depend on "which way the court ultimately rules" on the motion "or whether the document ultimately in fact influences the court's decision." *Id.* at 49. All that matters in identifying motion materials as judicial documents "relevant to the performance of the judicial function" is that they "would reasonably have the *tendency* to influence a district court's ruling on a motion." *Id.* (emphasis in original) (internal quotation marks omitted).

That "tendency" determination is predictive and properly made by reference to the motion papers when filed, not to when—or even if—the motion is decided. Thus, a motion that is moot *when filed* is not properly identified as a judicial document because it can have no tendency to influence a district court's exercise of adjudicatory power. But the same conclusion does not obtain with respect to a motion that, when filed, sought to secure a particular ruling within the court's Article III power. Like the complaint in *Bernstein*, such a motion and its attendant materials are

21

properly identified as judicial documents even if the motion remains undecided when the case closes and is thereby rendered moot.[9]

In sum, the identification of a judicial document is a binary decision made as of the time of the document's filing, *i.e.*, filed material either is or is not a judicial document depending on whether it could have a tendency to influence the court in the exercise of its Article III powers. Subsequent events do not alter that conclusion. Thus, insofar as the district court ruled in its December 2019 and January 2020 Orders that the settlement of Giuffre's defamation action rendered pending motions in that case moot such that they could no longer be deemed judicial documents, we identify error, vacate those orders, and remand the case to the district court with directions that it conduct an individual review of the motion materials consistent with this opinion and order unsealing as appropriate.

---

[9] At the second and third steps of sealing analysis, events subsequent to filing may warrant consideration. *See generally Stafford v. Int'l Bus. Machs. Corp.*, 78 F.4th at 70 (stating that "presumption of access to judicial documents" related to petition to confirm arbitration award was "weaker . . . because the petition to confirm . . . was moot"). *Stafford* is distinguishable from this case, however, in an important respect. Unsealing was sought with respect to materials assumed to have been properly sealed in the first instance. *See id.* at 71 (noting "[c]onfidentiality is a paradigmatic aspect of arbitration" (internal quotation marks omitted)). In that context, the subsequent mootness of the petition to confirm was understood to have reduced the weight of the presumption of access to the properly sealed materials, thereby reinforcing the original sealing determination. By contrast, here, the district court's individual document review is intended to *correct* possible error in the initial wholesale sealing of large numbers of documents. *See supra* n.5. To the extent documents should never have been placed under seal at the start, reducing the original presumption of access based on subsequent mootness does not warrant allowing the error to stand.

22

## B. Giuffre's Florida Deposition Transcript

At the behest of certain "Does," the district court in a November 18, 2022 oral ruling, declined to unseal those parts of Giuffre's deposition testimony given in a Florida action that had been submitted by Alan Dershowitz in support of his motion to intervene in this case.[10] The district court reasoned that the "document played no apparent role in the Court's decision on the motion" and, therefore, even if it was a judicial document, "any presumption of public access to this document is barely cognizable." Transcript at 9–10, *Giuffre v. Maxwell*, No. 15-cv-7433 (S.D.N.Y. Nov. 18, 2022). This misapprehends our precedent.

First, a court should proceed cautiously in assuming that judicial documents submitted to a district court in support of a motion "played no apparent role" in the court's ruling on that motion. Indeed, in *Lugosch v. Pyramid Co. of Onondaga*, we endorsed a contrary assumption, *i.e.*, that submissions to a district court in support of or opposition to a motion "can fairly be assumed to play a role in the court's deliberations." 435 F.3d at 123 (internal quotation marks omitted). Second, and in any event, this court has "expressly rejected the proposition that 'different types of documents might receive different weights of presumption based on the extent to which they were relied upon in resolving a motion.'" *Maxwell I*, 929 F.3d at 48 (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d at 123) (alteration adopted). In *Lugosch*, we explained that "[i]f the rationale behind access is to allow the public an opportunity to assess the correctness of the judge's decision . . . documents that the judge should have considered or relied upon, but did not, are just as deserving of disclosure as those that actually entered into the

---

[10] *See supra* n.3.

judge's decision."  435 F.3d at 123 (internal quotation marks and emphasis omitted; ellipsis in original).  In other words, "the proper inquiry is whether the documents are relevant to the performance of the judicial function, not whether they were relied upon."  *Maxwell I*, 929 F.3d at 50.  That reasoning obtains here.

In urging otherwise, Maxwell attempts to distinguish *Lugosch* on the ground that the materials there at issue "were summary judgment documents, which enjoy the strongest presumption of access," whereas Giuffre's Florida deposition transcript "had nothing to do with the merits of Giuffre's defamation claim."  Maxwell Br. at 34 (emphasis omitted).  That argument elides the district court's reasoning, which focused—erroneously—on the extent to which the district court *relied* on the deposition transcript, not on the *type* of motion to which the transcript pertained and, hence, on the extent to which the motion called on the court to exercise Article III judicial power.  We need not here decide how the degree of judicial power exercised in ruling on a motion to intervene compares to that exercised on a dispositive motion.  It suffices to say that the former as well as the latter invokes a court's Article III judicial power to secure a desired ruling.  *See generally Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) ("On timely motion, the court *must* permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action." (emphasis in original) (internal quotation marks omitted)).

For reasons discussed in the preceding section, this means that the intervention motion filings here at issue are judicial documents.  *See supra* at 16–22.  And while the presumption of access attached to such documents may not be as "strong" as that attached to summary judgment filings,

*Maxwell I*, 929 F.3d at 49–50, it cannot be characterized as "barely cognizable," Transcript at 9–10, *Giuffre v. Maxwell*, No. 15-cv-7433 (S.D.N.Y. Nov. 18, 2022), and certainly not on the ground that a document supporting that motion appears not to have been relied on by the district court in ruling on that motion.

Accordingly, we vacate the November 18, 2022 ruling to the extent that it declined to unseal the submitted parts of Giuffre's Florida deposition transcript and remand for the district court to conduct a further review consistent with this opinion.

### C. The Does' Sealing Submissions

The *Herald* argues that the district court erred in sealing "the Does' objections to the unsealing of their information, on which the Court based its unsealing rulings," despite the *Herald*'s request for such materials to be placed on the public docket.  *Herald* Br. at 33; *see* App'x at 584 (requesting that "nature and quantity of comments received be reflected on the public docket"); *id.* at 601 (requesting that "Court place all non-party objections on the docket[] [and] permit the parties a brief period to respond").[11]

In support, the *Herald* points to "the district court's own unsealing protocol," *Herald* Br. at 33, which states that the court would "make appropriate redactions . . . and file" the Does' submissions via the court's electronic filing system.  Order and Protocol for Unsealing Decided Motions at 4, *Giuffre v. Maxwell*, No. 15-cv-7433 (S.D.N.Y. Mar. 31, 2020); *accord* Updated Order and Protocol for Unsealing Decided Motions at 4, *Giuffre v.*

---

[11] Because the *Herald* made these requests, we are satisfied that its arguments on this point are preserved, contrary to the arguments of *Amicus Curiae* Doe 183.

25

*Maxwell*, No. 15-cv-7433 (S.D.N.Y. Apr. 17, 2020) (reiterating same in updated protocol).  We note that the unsealing protocol also provides that, "[u]nless expressly stated otherwise, all notices, submissions, and filings made pursuant to this [unsealing protocol] shall remain permanently sealed inasmuch as they are submitted solely so that the Court may decide whether any Sealed Materials should be unsealed."  *Id*.

We need not here resolve any possible ambiguity in these two provisions because, in any event, the parties have not cited any order of the district court ruling on the *Herald*'s request for the Does' sealing submissions to be made public, nor have we identified any such order on the extensive district court docket.  Under these circumstances, we would normally remand for the district court to rule in the first instance on the *Herald*'s request.  *See Melendez v. City of New York*, 16 F.4th 992, 1046 (2d Cir. 2021) (remanding for consideration of argument "advanced in plaintiff's" brief on which district court did not rule).  Before doing so, however, we address the merits of the parties' arguments in the interest of easing the burden this unsealing process has already placed on the district court.

In arguing for maintaining the Doe filings under seal, *Amicus Curiae* Doe 183 relies on a footnote in *Maxwell I* stating that "the presumption of public access does not apply to material that is submitted to the court solely so that the court may decide whether that same material must be disclosed." Doe 183 Br. at 7 (emphasis omitted) (quoting *Maxwell I*, 929 F.3d at 50 n.33). That reliance is misplaced for at least two reasons.  First, Doe 183's quotation is a truncation of the cited footnote which, read in full, addresses "whether [the relevant disputed] material must be disclosed *in the discovery process or shielded by a Protective Order*."  *Maxwell I*, 929 F.3d at 50 n.33 (emphasis added).  Footnote 33 did not address material submitted in connection with

motions to seal documents already disclosed in discovery and filed with the court.

Second, and more to the point, *Maxwell I* defines a judicial document as material filed with a court that "would reasonably have the tendency to influence [not only] a district court's ruling on a motion . . . [but also] the exercise of its supervisory powers." 929 F.3d at 49 (emphasis omitted); *see id.* ("[A] court performs the judicial function not only when it rules on motions currently before it, but also when properly exercising its inherent supervisory powers." (internal quotation marks omitted and alteration adopted)). The sealing or unsealing of court filings is an exercise of supervisory power over the court's docket. *See id.* at 51 ("Every court has supervisory power over its own records and files . . . ." (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)) (internal quotation marks and alteration omitted)).

The Doe filings here at issue qualify as judicial documents because they were submitted to "influence [the] district court's ruling[s]" as to whether *other* judicial documents submitted throughout the defamation litigation should be maintained under seal; they were not submitted "solely so that the court may decide whether *that same material*"—*i.e.*, the Doe filings—"must be disclosed in . . . discovery." *Id.* at 49, 50 & n.33 (emphasis added); *cf. SEC v. TheStreet.Com*, 273 F.3d 222, 232–33 (2d Cir. 2001) (holding deposition transcript not judicial document when submitted only so district court could determine whether *that transcript* met protective order's definition of "confidential information" so as to be excused from filing on public docket). Accordingly, a presumption of public access attaches to the Doe filings, and the district court on remand can proceed to the second and

27

third steps of analysis, *i.e.*, determining the weight of the presumption and balancing the presumption against countervailing interests.

Because the Doe filings invoked the court's supervisory powers with respect to its maintenance of other documents on its docket, the filings are incrementally more attenuated from and "ancillary to the court's core role in adjudicating a case," *Maxwell I*, 929 F.3d at 50, and, thus, entitled to a somewhat lower presumption of public access. How much lower depends on the underlying judicial documents at issue. The more those documents implicate a court's core adjudicative role, the stronger the presumption of access that applies to them and, by extension, to filings seeking to seal or unseal them. The more removed the underlying documents are from a court's core adjudicative role, the more reduced the presumption of access that applies to them, and to sealing filings pertaining to them. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d at 119 (referencing "continuum" on which judicial document's presumption of access is governed by "role of the material at issue in the exercise of Article III judicial power" (internal quotation marks omitted)). Thus, where filings urging the court to seal or unseal pertain to documents that themselves play only a "negligible role" in a court's performance of its Article III duties, those documents are accorded only a low presumption of public access—"little more than a prediction"— and the related filings to seal or unseal no more so. *Maxwell I*, 929 F.3d at 49–50 (internal quotation marks omitted). These different weights—both for sealing filings and the documents to which they pertain—reflect differences not only in the degree to which the materials implicate core judicial functions but also in the "resultant value of such information to those monitoring the federal courts." *Id.* at 49 (internal quotation marks omitted).

28

We are confident that, on remand, the able district judge will consider these factors in individually reviewing the Doe filings and the underlying documents to which they pertain, assigning an appropriate weight to the presumption of public access applicable to the filings, weighing that presumption against any countervailing interests, and then deciding which filings (or parts of filings) can be unsealed.

### D. Remaining Challenges

We have reviewed Giuffre's and the *Herald*'s further arguments challenging the district court's decisions to maintain under seal parts of Maxwell's deposition and parts of documents identifying certain Does, and its decision not to release the list of Does it used in its unsealing review. We identify neither legal error nor abuse of discretion in these decisions and, thus, we reject the arguments challenging them on the merits.

### CONCLUSION

To summarize, we hold as follows:

1. This court has jurisdiction to review the district court's December 2019 and January 2020 Orders notwithstanding Giuffre's and the *Herald*'s failure to file notices of appeal within 30 days of their entry because these orders were not final and, thus, are properly reviewed on timely appeal of the district court's final unsealing orders issued on December 18, 2023 and January 5, 2024.

2. In maintaining certain documents under seal or refusing to make other documents public, the district court erred in the following ways:

   a. The district court concluded that materials filed in connection

with motions subsequently mooted by settlement of the underlying case were categorically not "judicial documents" entitled to some presumption of public access. Whether such materials are properly identified as judicial documents is determined as of the time of filing and that determination is not affected by subsequent mootness.

b. The district court concluded in its November 18, 2022 oral ruling that Giuffre's Florida deposition transcript offered in support of a third-party motion to intervene was entitled to only a "barely cognizable" presumption of access because the "document played no apparent role in the Court's decision on the motion." Transcript at 9–10, *Giuffre v. Maxwell*, No. 15-cv-7433 (S.D.N.Y. Nov. 18, 2022). Documents do not "receive different weights of presumption based on the extent to which they were relied upon in resolving a motion." *Maxwell I*, 929 F.3d at 48 (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d at 123) (alteration adopted).

c. The district court failed to treat briefs and supporting documents filed in connection with sealing or unsealing motions as judicial documents. Insofar as such materials have the tendency to influence sealing rulings, which are an exercise of judicial supervisory power, they constitute judicial documents. The weight of the presumption of access applicable to filings implicating a court's supervisory power may be less than that applicable to documents relevant to a court's exercise of adjudicatory power. That weight may also

vary according to the weight of the presumption applicable to the underlying material.

3.  In all other respects, appellants' claims of error are without merit.

For the forgoing reasons, we **VACATE** the district court's December 2019 and January 2020 Orders in their entirety, and its November 18, 2022 oral ruling to the extent set forth above, and we **REMAND** the case to the district court for individualized review of materials consistent with this opinion.  In all other respects, we **AFFIRM** the appealed orders and rulings.